CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CAREL ALE (Bar No. 283717)
(E-Mail: Carel_Ale@fd.org)
CHARLES SNYDER (Bar No. 287246)
(E-Mail: Charles_Snyder@fd.org)
ADAM OLIN (Bar No. 298380)
(E-Mail: Adam_Olin@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-4740
Facsimile: (213) 894-0081

Attorneys for Defendant
José Luis Huizar

[And on Behalf of All Defendants]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSE LUIS HUIZAR, *et al.,* <br><br> Defendants. | Case No. 20-CR-0326-JFW <br><br> **NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF (1) COOPERATORS' DEVICES AND ACCOUNTS, (2) COMMUNICATIONS BETWEEN GOVERNMENT AND COOPERATORS AND/OR THEIR COUNSEL, AND (3) JOSE HUIZAR'S PHONE; DECLARATION OF COUNSEL; EXHIBITS** <br><br> Proposed Hearing Date: April 25, 2022 <br> Time: 8:00 a.m. |

1

TO THE UNITED STATES ATTORNEY AND HER COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, on April 25, 2022 at 8:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable John F. Walter, United States District Judge, Defendants, will move to compel the production of the categories of discovery set forth in the motion below.

## **MOTION TO COMPEL**

Defendant José Luis Huizar, and on behalf of all defendants, hereby moves this Honorable Court for an order to compel the government to produce:

A,      Exact duplicate forensic copies of the imaged devices and email, cloud storage, or any accounts in the government's possession, belonging to: (1) George Esparza, (2) Justin Kim, (3) Ricky Zheng, (4) George Chiang, (5) Businessperson A, (6) Shawn Kuk, (7) John Carlin, (8) Morrie Goldman, and (9) Executive M;

B.      All communications and evidence of communications, including scheduling notices, non-privileged notes, or other documentation of communications between the government and (1) George Esparza, (2) Justin Kim, (3) Ricky Zheng, (4) George Chiang, (5) Businessperson A, (6) Jonathan Zuniga, (7) Shawn Kuk, (8) Morrie Goldman, (9) Company M, (10) Executive M, (11) Company D, (12) Chairman D, (12) Greg Sun, (13) Michael Bai, and (14) Councilmember D, and/or their counsel; and

C.      Defendant Jose Huizar's phone.

This motion is based on the Fifth Amendment to the United States Constitution, Federal Rules of Criminal Procedure, attached Memorandum of Points and Authorities, declaration of counsel, exhibits, all files and records in this case, and any further evidence as may be adduced at the hearing on this motion.

//

//

//

//

2

1  |  The parties have met and conferred regarding the requested discovery and are

2  unable to reach a resolution.

3

4

5  |  Respectfully submitted,
   CUAUHTEMOC ORTEGA
6  |  Federal Public Defender

7  Dated: March 3, 2022  |  *s/ Carel Alé*
8  |  Carel Alé
   Charles J. Snyder
9  |  Adam Olin
   Deputy Federal Public Defenders
10  |  Attorneys for Jose Luis Huizar

11  |  [And on Behalf of All Defendants]

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ............................................................................................... 2

    A.    Discovery Requested ............................................................................ 2

        1.    Witness and Cooperator Devices and Accounts .......................... 2

        2.    Communications Between Government and Witnesses and Cooperators ................................................................................ 3

        3.    Mr. Huizar's Phone .................................................................... 4

    B.    Defense's Discovery Requests and Parties' Meet and Confers ................ 4

III. LEGAL ANALYSIS ........................................................................................ 7

    A.    Legal Standards Governing Government's Disclosure Obligations ............ 7

        1.    Federal Rule of Criminal Procedure 16 ...................................... 7

        2.    Government's Discovery Obligations Pursuant to *Brady* and its Progeny ................................................................................ 8

    B.    The Government Must Disclose the Requested Discovery ...................... 11

        1.    Cooperator Testimony is Central to the Government's Case and the Requested Evidence is Discoverable Impeachment Evidence .. 11

        2.    The Cooperator/Witness Materials Are Discoverable .................... 13

        3.    The Government Must Produce Mr. Huizar's Phone ...................... 16

    C.    The Government's Proffered Objections Are Unavailing ........................ 16

        1.    The Protective Order and Rules of Evidence Adequately Protect Any Privacy Interests ................................................................ 17

        2.    As the Court Has Already Stated, Defendants' Right to Discovery Outweighs the Government's Interests in "Ongoing Investigations" .......................................................................... 20

        3.    The Government has Reviewed the Devices in Their Entirety and there are No Fourth Amendment Concerns ............................ 20

        4.    The Government Should Return Mr. Huizar's Phone .................... 22

        5.    There is No Reason to Delay the Production of Communications Between the Government and Cooperators and their Counsel ........ 23

IV. CONCLUSION ................................................................................................ 25

1

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                                        **Page(s)**

*Brady. Giglio v. United States*,
   405 U.S. 150 (1972)..................................................................*passim*

*Brady v. Maryland*,
   373 U.S. 83 (1963)....................................................................*passim*

*Burdeau v. McDowell*,
   256 U.S. 465 (1921)........................................................................20

*Commonwealth of Northern Mariana Islands v. Bowie*,
   243 F.3d 1109 (9th Cir. 2001) ...........................................................9

*Crawford v. Washington*,
   541 U.S. 36 (2004)............................................................................9

*Dennis v. United States*,
   384 U. S. 855 (1966)........................................................................13

*Illinois v. Rodriguez*,
   497 U.S. 177 (1990)........................................................................22

*Kyles v. Whitley*,
   514 U.S. 419 (1995)..........................................................10, 13, 24

*Ouimette v. Moran*,
   942 F.2d 1 (1st Cir. 1991) ...............................................................10

*In re Perez*,
   749 F.3d 849 (9th Cir. 2014) ..........................................................19

*Rakas v. Illinois*,
   439 U.S. 128 (1978)........................................................................21

*Singh v. Prunty*,
   142 F.3d 1157 (9th Cir. 1998) ........................................................10

*United States v. Bagley*,
   473 U.S. 667 (1985)........................................................................10

*United States v. Bernal–Obeso*,
   989 F.2d 331 (9th Cir. 1993) ............................................................9

*United States v. Blanco*,
   392 F.3d 382 (9th Cir. 2004) ............................................................................8

*United States v. Bundy*,
   968 F.3d 1019 (9th Cir. 2020) .................................................................8, 9, 23

*United States v. Cohen*,
   366 F. Supp. 612 (S.D.N.Y. 2019) ...................................................................18

*United States v. Doe*,
   705 F.3d 1134 (9th Cir. 2013) ..........................................................................15

*United States v. Duval*,
   496 F.3d 64 (1st Cir. 2007) ...............................................................................10

*United States v. Hernandez-Meza*,
   720 F.3d 760 (9th Cir. 2013) .....................................................................7, 8, 11

*United States v. Juan*,
   704 F.3d 1137 (9th Cir. 2013) ..........................................................................13

*United States v. Lloyd*,
   992 F. 2d 348 (D.C. Cir. 1993) ........................................................................10

*United States v. Lucas*,
   841 F.3d 796 (9th Cir. 2016) .........................................................................7, 24

*United States v. Luchko*,
   2007 WL 1651139 (E.D. Pa. June 6, 2007) .....................................................18

*United States v. Muniz-Jaquez*,
   718 F.3d 1180 (9th Cir. 2013) ...............................................................8, 13, 23

*United States v. O'Brien*,
   2014 WL 204695 (D. Mass. Jan. 17, 2014) .....................................................18

*United States v. Price*,
   566 F.3d 900 (9th Cir. 2009) ............................................................................10

*United States v. Rodriguez*,
   496 F.3d 221 (2d Cir. 2007) .............................................................................11

*United States v. Sager*,
   227 F.3d 1138 (9th Cir. 2000) ..........................................................................13

*United States v. Savedoff*,
2017 WL 2305751 (W.D.N.Y. May 25, 2017) ..................................................17

*United States v. Sealey*,
830 F.2d 1028 (9th Cir. 1987) .........................................................................20

*United States v. Smith*,
101 F.3d 202 (1st Cir. 1996)...........................................................................16

*United States v. Smith*,
985 F. Supp. 2d 506 (S.D.N.Y. 2013) ..............................................................17

*United States v. Soto–Zuniga*,
837 F.3d 992 (9th Cir. 2016) .............................................................................7

*United States v. Steinberg*,
99 F.3d 1486 (9th Cir. 1996) ...........................................................................11

*United States v. Stever*,
603 F.3d 747 (9th Cir. 2010) ......................................................................7, 24

*United States v. Strifler*,
851 F2d 1197 (9th Cir. 1988) ..........................................................................11

*United States v. Sudikoff*,
36 F. Supp. 2d 1196 (C.D. Cal. 1999) .............................................................10

*United States v. Wilson*,
13 F.4th 961 (9th Cir. Sept. 21, 2021) .............................................................20

*Walter v. United States*,
447 U.S. 649 (1980)........................................................................................22

**Federal Statutes**

18 U.S.C § 3500(a) ...............................................................................5, 7, 11

**Other Authorities**

U.S. Const. IVAmendment.........................................................................*passim*

U.S. Const. V Amendment ...................................................................................2

Fed. R. Crim. P. 16 ...................................................................................*passim*

Fed. R. Crim. P. 403 .........................................................................................18

## **TABLE OF EXHIBITS**

| Exhibit | Description | Page(s) and Line(s) |
|---------|-------------|---------------------|
| A | FBI Form FD-1087 titled "Consent via George Esparza," dated 02/15/2019 | 3:10-14; 21:9-24. |
| B | Jan. 13, 2021 Discovery Request from Defendant Huizar to Government | 4:24. |
| C | Apr. 28, 2021 Government's Response to Defendant Huizar's Discovery Request | 4:25-5:24; 24:3-10. |
| D | 302 Report of June 20, 2017 Government Interview of George Esparza | 12:21-24. |
| E | 302 Report of July 19, 2017 Government Interview of Businessperson A (filed under seal) | 15:8-13. |

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I. INTRODUCTION**

Almost two years ago, the Court admonished the parties that, in its view, "the Government's discovery obligation in this case is basically an open file." 04/05/2021 Tr. Status Conference at 41:19-22. And yesterday, the Court described the government's case as a "virtual open book."  (ECF No. 380 (March 2, 2022 Order Denying Defendants Motion for Bill of Particulars), 2.)

While the government has indeed provided voluminous discovery–including another approximately 17,000 pages just last week–the Court's perception is imprecise: as set forth in this motion, the government has tightly held on to certain important, relevant, and responsive materials. The discovery sought through this motion consists of (1) exact duplicate forensic copies of the imaged devices and email, cloud storage, or any accounts of all cooperators and witnesses in the government's possession, (2) all communications between the government and any witnesses or cooperators and their counsel, including non-privileged notes, scheduling notices, and all records of communications, and (3) Mr. Huizar's phone. All of these items are discoverable; all of these items have been in the government's possession for several years; all have been requested by defense counsel; and yet all are being withheld.

This evidence is significant, and its delayed production cannot be justified. The government's case largely hinges on the testimony of cooperating witnesses (that is, witnesses who have admitted wrongdoing and are attempting to obtain reduced punishment by "cooperating" with the government); their stories have starkly transformed through negotiations with the government. The credibility of these cooperators is central to the government's case and, accordingly, Mr. Huizar and all defendants in this case have cause to challenge their credibility. All of the known cooperators (who were offered immunity or reduced pleas) provided different versions of events throughout the government's investigation and each told different and conflicting stories from each other. Many, if not all, have lied to the government during

1

this investigation. There is no basis for the government to delay the production of the requested discoverable materials.

Moreover, with regards to the cooperator devices, the government has reviewed the complete devices. The requested evidence is squarely discoverable pursuant to *Brady* and Rule 16, and it is crucial to defendants' ability to prepare their defenses. All of this information has been in the government's possession for years. Despite its own review and familiarity with this discovery, the government continues to withhold this clearly relevant evidence.

The defense respectfully asks this Court to issue an order compelling the government to produce the requested discovery.

## II. BACKGROUND

### A.   Discovery Requested

The defense is seeking:

> A,   Exact duplicate forensic copies of the imaged devices and email, cloud storage, or any accounts in the government's possession, belonging to: (1) George Esparza, (2) Justin Kim, (3) Ricky Zheng, (4) George Chiang, (5) Businessperson A, (6) Shawn Kuk, (7) John Carlin, (8) Morrie Goldman, and (9) Executive M;

> B.   All communications and evidence of communications, including scheduling notices, non-privileged notes, or other documentation of communications between the government and (1) George Esparza, (2) Justin Kim, (3) Ricky Zheng, (4) George Chiang, (5) Businessperson A, (6) Jonathan Zuniga, (7) Shawn Kuk, (8) Morrie Goldman, (9) Company M, (10) Executive M, (11) Company D, (12) Chairman D, (12) Greg Sun, (13) Michael Bai, and (14) Councilmember D, and/or their counsel; and

> C.   Defendant Jose Huizar's phone.

### 1.   Witness and Cooperator Devices and Accounts

Throughout its multi-year investigation, the government has obtained the devices of, and email, cloud storage, or any accounts associated with many of the witnesses and

cooperators in this case either through warrants or voluntary production by those witnesses/cooperators. The government obtained warrants for digital devices from:

1. George Chiang,
2. Shawn Kuk,
3. Ricky Zheng
4. Justin Kim,
5. Executive M, and
6. John Carlin.

The federal case agent, Andrew Civetti, reviewed each device in its entirety. Decl. of Counsel, ¶ 13.

Further, on February 7, 2019, the government obtained a complete waiver from George Esparza to search all of his devices. *Id.*, ¶17, Ex. A. The waiver stated: "I have been asked by Special Agents of the Federal Bureau of Investigation to permit a *complete search* of," (*id.*, Casino_0363768) (emphasis added), and listed the three devices belonging to Esparza. There was no limitation or narrowing language in the waiver. *See id.*

The government has yet to produce the exact duplicate forensic copies of the imaged devices and accounts in its possession to the defense, including in the case of Esparza who signed a complete waiver of his devices.

## 2. Communications Between Government and Witnesses and Cooperators

The government has built its case on the testimony of various witnesses and alleged co-conspirators. The government's extensive communications with various witnesses and cooperators are clear from the FSI and the FBI 302 interview reports' evidencing the many interviews of witnesses, many of whom were represented by counsel.

This is also apparent from the many agreements the government extended and entered into with many witnesses and cooperators in this case. That list includes:

1. Mitch Englander, 20-CR-0035-JFW, ECF No. 24 (plea agreement filed on Mar. 27, 2020);

3

2. Justin Kim, 20-CR-0154-JFW, ECF No. 7 (cooperation plea agreement filed on Mar. 19, 2020);
3. George Chiang, 20-CR-0203-JFW, ECF No. 7 (cooperation plea agreement filed on May 13, 2020);
4. George Esparza, 20-CR-0208-JFW, ECF No. 9 (cooperation plea agreement filed on May 27, 2020);
5. Morrie Goldman, 20-CR-0369-JFW, ECF No. 9 (cooperation plea agreement filed on Aug. 25, 2020);
6. Jia Yuan USA Co., Non-Prosecution Agreement (signed on Oct. 5, 2020), (ECF No. 353, Ex. 5); and
7. Company M, Non-Prosecution Agreement (signed on Dec. 21, 2020), (*Id.*, Ex. 6.)

All of these witnesses and cooperators were represented by counsel.

The government has thus far refused to produce the communications and evidence of communications between the government and witnesses and cooperators, and between the government and those individuals' respective counsel. *Id.*, ¶14. Further, in the case of the corporations, the government has taken the position that it will *only* produce communications if a corporate representative who has "first hand knowledge" of these communications takes the stand. *Id.*

### 3.    Mr. Huizar's Phone

The government has possessed Mr. Huizar's phone for nearly two years. In March 2020, the government sought, received, and executed a search warrant for Mr. Huizar's phone. (*See* ECF No. 340 at 2 n.3.) After Mr. Huizar and his counsel advised the government that it had confiscated the wrong phone, the government obtained a warrant for the second phone. (*Id.*) As of February 22, 2022, the government had been unable to access the second phone and has not allowed the defense to access that phone. *Id.*, ¶15

## B.    Defense's Discovery Requests and Parties' Meet and Confers

Mr. Huizar first requested the discovery at issue in this motion in January 2021. *Id.*, ¶, Ex. B. On April 28, 2021, the government sent a letter response. *Id.*, ¶, Ex. C. In it the government explained that it would not provide the complete forensic copies of the cooperators' devices. *Id.*, 5. The government stated that,

> For evidence seized from other co-defendants, cooperating witnesses, and non-trial witnesses, the government produced copies of e-mail and cellphone records seized within the judicially authorized scope of various federal search warrants

4

and retained as evidence. Although the original full e-mail and cellphone records are booked into evidence for authenticity purposes, the search warrants only permit the search and seizure of pertinent material within the scope of Attachment B for a limited amount of time (now expired). . . . The AUSAs have not reviewed any information outside of the scope of such warrants and the government has no present judicial authority to search such out of scope material.

The digital evidence seized pursuant to warrants and produced in this case was extensive and, particularly given the nature of the evidence, contains private and sensitive material, including of and relating to public officials.

*Id.*

With regards to communications between the government and cooperators and their counsel, the government stated in the same letter that it would "produce substantive email and text communications between the prosecution team and the witness and/or counsel for the witness to the extent such communications constitute *Brady*, *Giglio*, or Jencks Act material." *Id.*, 3. With regards to non-trial witnesses, the government stated that it did not intend to produce proffer, non-target, or immunity letters because of "countervailing privacy concerns, and because such records to not constitute *Giglio* material." *Id.* Similarly, with regards to drafts of agreements and communications regarding those agreements, the government stated that it would only produce those documents for testifying government witnesses. *Id.*, 3-4. And, "[t]o the extent the Hazens and/or [Company M] corporate representatives who personally participated in the negotiation of their respective company's resolution testify in the government's case-in-chief, the government will produce drafts of Non-Prosecution Agreements (and related factual basis documents) exchanged with defense counsel and substantive e-mail communications with defense counsel reflecting NPA negotiations." *Id.* Otherwise, the government would withhold that evidence.

On September 30, 2021, the defense reached out to the government regarding pending discovery issues. *Id.*, ¶6. On October 14, 2021, the parties met and conferred. *Id.*, ¶8. During the meet and confer the government stated that it would not produce complete cooperator devices or accounts because producing them would infringe the

5

cooperators' privacy interests since the devices contained sensitive material, that devices contained material that could be used as "oppo research" related to other public officials, that some material could "chill testimony," and that there were safety concerns with producing the devices and accounts. *Id.*, ¶9. The defense explained that it believed the Protective Order addressed these concerns but also suggested a compromise position whereby the government would allow an attorney's-eyes-only review. *Id.*, ¶10. The government said it would consider the proposal but was concerned about the scope of the warrants. *Id.*

On February 22, 2022, the parties met and conferred about these requests again. *Id.*, ¶11. The government stated that despite its statements in the April 28, 2021 letter or the October meet and confer, it was no longer attempting to withhold the devices or accounts because they contained information of a personal nature or information about other politicians. *Id*, ¶12. The government asserted that it was withholding the devices and accounts because they contain information outside of the scope of the warrants and that producing them to defendants would violate the cooperators' Fourth Amendment rights. *Id*. The defense explained that it understood Agent Andrew Civetti, the case agent, had reviewed all of the devices and accounts regardless of the scope of any warrant or waiver. *Id.*, ¶13. The government confirmed that "Agent Civetti did see everything." *Id.*

With regards to the government's communications with cooperators and/or their counsel, the government again stated that it would produce those materials by the Court's August 19, 2022, deadline to produce *Brady*/*Giglio* materials. *Id.*, ¶14. Defense counsel explained that since this information is relevant to the defense investigation and in the government's possession now, there was no reason to delay production other than gamesmanship or an attempt to hinder the defense's investigation. *Id.* The government replied that it would produce the discovery by the deadline. *Id.* Similarly, the defense clarified that it was reasserting its prior request for scheduling notices and all other communications with cooperators and their counsel. *Id.* The government stated that it did not consider those communications substantive and would not produce them. *Id.*

As to Mr. Huizar's phone, the government stated that it had not yet been able to break the password on Mr. Huizar's phone and that it had obtained and would soon seek another extension of the warrant for that phone. *Id.*, ¶15. The government stated that it would not provide a forensic copy or access to the defense to copy the phone. *Id.*, ¶16.

### III. LEGAL ANALYSIS

**A.  Legal Standards Governing Government's Disclosure Obligations**

There are three sources establishing the government's disclosure obligations: Federal Rule of Criminal Procedure 16, *Brady v. Maryland* and its progeny including *Giglio*, and § 3500 of the Jencks Act.

**1.  Federal Rule of Criminal Procedure 16**

It is well understood that pursuant to its discovery obligations under Federal Rule of Criminal Procedure 16, "the government must disclose any documents or other objects within its possession, custody, or control that are material to preparing the defense" upon request by the defense, *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (internal quotations omitted), evidence that the government intends to use in its case-in-chief, and evidence that was obtained from, or belongs to the defendant, Fed. R. Crim. P. 16(a)(1)(E)(i)-(iii). Rule 16(a) "grants criminal defendants a broad right to discovery." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). This standard is described as a "low threshold" that "is satisfied if the information requested would have 'helped' [the defendant]" prepare a defense. *United States v. Lucas*, 841 F.3d 796, 804 (9th Cir. 2016). "Materiality is a 'low threshold; it is satisfied so long as the information . . . would have helped' to prepare a defense." *United States v. Soto–Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016). Indeed, "[i]nformation is material even if it simply causes a defendant to 'completely abandon' a planned defense and 'take an entirely different path.'" *United States v. Hernandez Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (quoting *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013)).

Nothing more than a simple request is needed to trigger the defendant's right to discovery:

> A defendant need not spell out his theory of the case in order to obtain discovery. Nor is the government entitled to know in advance specifically what the defense is going to be. The relevant subsection of Rule 16 is written in categorical terms: Upon defendant's request, the government must disclose any documents or other objects within its possession, custody or control that are "material to preparing the defense."

*Hernandez-Meza*, 720 F.3d at 768. At the same time, the burden on the government is heavy: "Lack of knowledge or even a showing of due diligence won't excuse noncompliance." *Id.* As the Ninth Circuit admonished, "[i]t thus behooves the government to interpret the disclosure requirement broadly and turn over whatever evidence it has pertaining to the case." *Id.* And, because "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense," the production required under Rule 16 is "broader than *Brady*." *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013).

### 2.   Government's Discovery Obligations Pursuant to *Brady* and its Progeny

The second source of the government's discovery obligations, as the Supreme Court explained in *Brady*, stems from the Constitution, which imposes through the Due Process Clause a duty on the government to turn over evidence favorable to a defendant. *Brady v. Maryland*, 373 U.S. 83, 86-87 (1963) (explaining when "nondisclosure by a prosecutor violates due process").

"When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within" the rule of *Brady*. *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). In other words, "[i]mpeachment evidence is exculpatory evidence within the meaning of *Brady*." *United States v. Blanco*, 392 F.3d 382, 387–88 (9th Cir. 2004) (citations omitted). Critically, "[t]he retrospective definition of materiality is appropriate only in the context of appellate review'; thus, 'trial prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial.'" *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020)

1   (quoting *United States v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013)). Nowhere is

2   that more true than when it comes to informants.

3          Cooperators are notoriously unreliable and pose a real risk to a fair and just

4   outcome. Information about informants is thus a particular subset of evidence that is

5   critical to ensuring a fair trial for a defendant. "By definition, criminal informants are cut

6   from untrustworthy cloth and must be managed and carefully watched by the government

7   and the courts to prevent them from falsely accusing the innocent, from manufacturing

8   evidence against those under suspicion of crime, and from lying under oath in the

9   courtroom." *United States v. Bernal–Obeso*, 989 F.2d 331, 333 (9th Cir. 1993); *see also*

10  *Commonwealth of Northern Mariana Islands v. Bowie*, 243 F.3d 1109 (9th Cir. 2001)

11  ("Never has it been more true than it is now that a criminal charged with a serious crime

12  understands that a fast and easy way out of trouble with the law is not only to have the

13  best lawyer money . . . , but to cut a deal at someone else's expense and to purchase

14  leniency from the government by offering testimony in return for immunity, or in return

15  for reduced incarceration."). The Constitution has selected a particular mechanism—

16  fulsome disclosure and searching cross-examination—to guard against these risks. *See*

17  *Crawford v. Washington*, 541 U.S. 36, 61-62 (2004) ("To be sure, the Clause's ultimate

18  goal is to ensure reliability of evidence, but it is a procedural rather than a substantive

19  guarantee. It commands, not that evidence be reliable, but that reliability be assessed in

20  a particular manner: by testing in the crucible of cross-examination."). Defendants have

21  an absolute right to present a complete defense at trial, including, attacking the

22  government's evidence, and are thus entitled to the broadest possible latitude when

23  challenging a cooperator, especially one with a history of dishonesty. In order to make

24  these rights meaningful, a defendant must receive fulsome discovery that could be used

25  to undermine the testimony and must receive it in time to make the most effective use of

26  the discovery for trial. *See Bundy*, 968 F.3d at 1033, 1034 (explaining that "*Brady*

27  material . . . should have been disclosed to the defense well in advance of the start of

28

9

trial," and that "[k]eeping the defense from gathering as much evidence as possible . . . was itself harmful").

The government's obligation to provide *Brady* material as to any of its cooperators and to do so in time for the defendants to effectively use it for trial is critical to a fair outcome. Accordingly, the government's discovery burden also includes any evidence "which tends to help the defense by either bolstering the defense's case or impeaching prosecution witnesses," and applies not just to admissible evidence but also to any information "that is likely to lead to admissible evidence." *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1199-1200 (C.D. Cal. 1999); *see Brady v. Maryland*, 373 U.S. at 87; *Kyles v. Whitley*, 514 U.S. 419 (1995); *see also United States v. Price*, 566 F.3d 900, 913 n.16 (9th Cir. 2009) (evidence is discoverable under *Brady* "even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence."). Inherent in that requirement is that the government produce the evidence with sufficient time for defendants to conduct investigations that could lead to admissible evidence. Favorable evidence includes all evidence that will "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F. 2d 348, 351 (D.C. Cir. 1993) (citations omitted); *see also United States v. Bagley*, 473 U.S. 667, 676-77 (1985).

Relatedly, the government is required to turn over evidence of any rewards or promises, formal or informal, made to an informant in exchange for cooperation or testimony. *See, e.g.*, *United States v. Bagley*, 473 U.S. 667, 667 (1985); *Giglio*, 405 U.S. at 155 (government must disclose promises of immunity); *United States v. Duval*, 496 F.3d 64, 74 (1st Cir. 2007) (government must disclose promises of leniency or dropped charges). The government is also required to turn over information that could serve to impeach the credibility of cooperators and witnesses. *See, e.g.*, *Singh v. Prunty*, 142 F.3d 1157, 1161-63 (9th Cir. 1998) (nondisclosure of state's agreement to provide benefits to witness in exchange for testimony violated due process); *Ouimette v. Moran*, 942 F.2d 1, 10, 11 (1st Cir. 1991) (failure to disclose extensive criminal record of State's chief

witness and witness's deals with State violated *Brady*); *United States v. Steinberg*, 99 F.3d 1486, 1490 (9th Cir. 1996) (new trial ordered because confidential informant was involved in illegal conduct while cooperating); *United States v. Strifler*, 851 F2d 1197, 1202 (9th Cir. 1988). This obligation includes providing information about oral conversations between the government and cooperators and witnesses that were not initially memorialized. *See United States v. Rodriguez*, 496 F.3d 221, 222 (2d Cir. 2007) ("When the Government is in possession of material information that impeaches its witness or exculpates the defendant, it does not avoid the obligation under *Brady/Giglio* to disclose the information by not writing it down."). [1]

## B.   The Government Must Disclose the Requested Discovery

There is no dispute that the defense has made a proper request for this discovery. Nor can there be a reasonable dispute that the requested discovery falls within Rules 16 and/or *Brady*. The defense's request is sufficient to trigger the government's discovery obligations and the defense need not disclose its theories to obtain discovery. *Hernandez-Meza*, 720 F.3d at 768. Nevertheless, in this case there are several readily apparent reasons why the defense is entitled to the requested discovery.

### 1.   Cooperator Testimony is Central to the Government's Case and the Requested Evidence is Discoverable Impeachment Evidence

First, the government's case against the defendants is largely premised on the testimony of the cooperators and witnesses. Their credibility is thus central to the defense. The Court need look no further than the First Superseding Indictment ("FSI") to see how pivotal the cooperators' credibility will be to the government's case and to the defense. (*See* ECF No. 74.) Very little of the FSI contains statements made by the defendants themselves; the FSI instead mixes and matches various versions of events by

---

[1] The third source of the government's discovery obligations, inapplicable for purposes of this motion, is the Jencks Act, which requires disclosure of a witness's statements. *See* 18 U.S.C § 3500(a); *see also* ECF No. 368 at 3 (setting Jencks deadline). Even then, Jencks material is regularly produced early in this district to avoid trial delays, a problem that is acutely present in a case of this size.

the cooperators or unindicted witnesses/co-conspirators. Beyond the FSI, the importance of the cooperators' and witnesses' testimony is evident most recently by the government's offer of proof. (*See* ECF No. 353). In response to the Court's order to lay out its evidence in support of its case against defendants 940 Hill and Shen Zen New World LLC, *all* of the government's exhibits in support of its offer of proof were factual bases of plea agreements or non-prosecutions agreements with cooperators or unindicted co-conspirators. (*See id.*, Exs. 1-6 (factual basis of Esparza, Chiang, Kim, Goldman, Jia Yuan, and Company M).) In a case so heavily reliant on the credibility of people who have already admitted to lying,[2] who the government itself acknowledges are not credible,[3] and whose stories are often inconsistent with each other, the need to inspect these cooperators' devices for information of their contemporaneous conduct and other wrongdoing for impeachment purposes is critical.[4] Only exact duplicate forensic copies of the cooperators' imaged devices will allow the defendants to conduct their own analysis and investigation of the devices. As the evidence stands now, the government has produced only parts of the relevant devices and even then, only in a Cellebrite report,[5] a format the defendants cannot use to locate additional materials or even confirm the accuracy of the government's review of the devices.

---

[2] For example, during a June 20, 2017, interview, Special Agent Carlos A. Narro confronted Esparza about one of Esparza's lies: "George, have you spoke to anybody and that's a simple question other than Joe Huizar? 'No'. That's what you said several times, that wasn't the truth was it?" Esparza responded, "I was trying to again, everything was [unintelligible]." "Yeah but George you didn't answer the question, it's a simple question, was that or not the truth? Be honest." Esparza finally replied, "No, it wasn't the truth . . . ." Decl. of Counsel, ¶ , Ex. D at Casino_359821.

[3] 09/20/2021 Tr. Motion Hearing at 14:1-7 (Justin "Kim does come with a lot of baggage. He lied to Mr. Lee to get an additional hundred thousand dollars. He lied to the FBI repeatedly.").

[4] The need for these devices, of course, goes beyond impeachment purposes to trial defenses which the defendants have no obligation to disclose in order to obtain the requested discovery.

[5] A Cellebrite report is a collection of information that was extracted from a mobile device and organized into a presentable format. The report is generated by a software application called Cellebrite Physical Analyzer.

The government has this information. It has itself reviewed the complete forensic images of the devices and accounts in its own preparation. As the Supreme Court has stated, "[i]n our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact." *Dennis v. United States*, 384 U. S. 855, 873 (1966). That is undoubtedly the case here.

### 2.    The Cooperator/Witness Materials Are Discoverable

The cooperator and witness materials are subject to discovery. The defendants have a right to challenge the credibility of the governments' witnesses and the ways in which that testimony may have been influenced or changed throughout the course of the government's investigation. Such grounds are well within the bounds of defense strategy. *See Kyles*, 514 U.S. at 449 ("In evaluating the weight of all these evidentiary items, it bears mention that the [evidence] would not have functioned as mere isolated bits of good luck for Kyles. Their combined force in *attacking the process by which the police gathered evidence and assembled the case* would have complemented, and have been complemented by, the testimony actually offered by Kyles's friends and family to show that Beanie had framed Kyles.") (emphasis added); *see also United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000) (holding the district court committed plain error and abused its discretion "by instructing the jury not to 'grade' the investigation," explaining "the court. . . muddled the issue by informing the jury that it could not consider possible defects in Morris's investigation. To tell the jury that it may assess the product of an investigation, but that it may not analyze the quality of the investigation that produced the product, illogically removes from the jury potentially relevant information"); *United States v. Juan*, 704 F.3d 1137, 1141 (9th Cir. 2013) ("Violating this duty by bullying a prosecution witness away from testimony that could undermine the government's case is no less distortive of the judicial fact-finding process than improperly meddling with the testimony of a defense witness."). Not only is the defense entitled to the requested information, *Muniz-Jaquez*, 718 F.3d at 1183 ("[i]nformation that is not exculpatory or

13

1    impeaching may still be relevant to developing a possible defense"), but here there is

2    evidence that witness testimony changed throughout the investigation.

3         Existing discovery illustrates how cooperator and witness testimony changed

4    throughout the investigation. For example, when the government interviewed Morrie

5    Goldman on December 5, 2018, Goldman was unequivocal that there was no *quid pro*

6    *quo*. According to the 302, Goldman consistently rejected any suggestion that Huizar

7    engaged in bribery, including with Company M. (ECF No. 365, Ex. 1 at

8    Casino_0365059.) Goldman told the government that "[p]eople contributed so they could

9    get into a room with Huizar and could explain their project directly to Huizar," but that

10   there were no ramifications for not contributing. (ECF No. 341, Ex. 1 (transcript of Dec.

11   5, 2018 meeting; previously filed under seal) at 23.) Goldman specified that "What would

12   cross the line was if Huizar said the only way that a consultant's client would get Huizar's

13   vote was if the client contributed to Huizar's PAC or donate to Monica Garcia for school

14   board. **Huizar did not do that**." (ECF No. 365, Ex. 1 at Casino_0365059 (emphasis

15   added).) As Goldman told the government when discussing Project M, "it **was not a quid**

16   **pro quo situation**, because it was a project that Huizar was going to support anyway,

17   and [Company M] would have supported any cause of Huizar's." (ECF No. 365, Ex. 1

18   at Casino_0365057.) "**Huizar never said** that the only way he would schedule a project

19   on PLUM would be if that project donated." (*Id.* (emphasis added).)

20        But less than a month after that interview, Goldman started placing recorded calls

21   on the government's behalf and producing additional documents to the government. By

22   January 16, 20219, a little more than a month after his initial interview, Goldman

23   recanted altogether.

24        Goldman "had a 'change in tone' from his first interview because looking back

25   [he] originally viewed and recalled situations through his 'own prism' and presented

26   information as he perceived it to be, but not from a bigger perspective. Goldman's

27   attorney advised [him] to conduct a more critical analysis from a bigger picture and from

28   the FBI's view point." (*Id.* at Casino_0367468.) "When viewing the situations from that

perspective," in other words from the government's perspective and not as he recollected and had understood it, Goldman "*understood things to be differently than originally perceived.*" (*Id.* (emphasis added).) It is a reasonable inference that the prosecutors had separate, unrecorded conversations with Goldman's counsel about whether they believed Goldman's testimony. (*Cf.* ECF No. 312 (detailing communications between prosecutors and Mr. Huizar's counsel between proffer sessions directing him to, for example, "come clean" on the government's allegations.)

Similarly, one of the principal cooperators in this case, Businessperson A, has changed his story significantly to match the government's theory of the case since first being interviewed. When Businessperson A first met with the government on July 19, 2017, he told the government that he "**never paid money for something with the intention of getting something in return from a public official**," "**never asked for favors from a political official**, including a City Councilman," and "never paid any public official money to ask a favor from them." Decl. of Counsel, ¶19, Ex. E at Casino_0343680 (Businessperson A 302) (filed under seal). Yet, by the filing of the FSI, Businessperson A's account too had drastically changed. According to the FSI, Businessperson A had supposedly been giving Huizar financial benefits in exchange for favors for years by the time he was first interviewed by the government. (*See* FSI at OAs 201-333.)

The above instances, though not exhaustive, exemplify the way witness narratives have changed throughout the government's investigation. The requested materials—both the devices and accounts and the communications—are central to understanding these changing accounts. The government's obligations require it to produce the exact forensic copies of the cooperators' devices and accounts and all communications and evidence of communications between the parties.[6]

---

[6] And even if in some instances the materials do not establish shifting narratives, that information could be useful in foreclosing a potential defense, which renders it

### 3.    The Government Must Produce Mr. Huizar's Phone

Federal Rule of Criminal Procedure 16(a)(1)(E) requires the government to produce for inspection or copying items that are material to preparing a defense or were obtained from, or belong to, the defendant. Fed. R. Crim. P. 16(a)(1)(E)(i) & (iii). The government continues to refuse to make Mr. Huizar's phone available for inspection or copying or to produce Mr. Huizar's phone to him.[7]

The government has had Mr. Huizar's phone for two years. The government has had more than sufficient time to attempt to access Mr. Huizar's phone. The phone is material to preparing a defense and Mr. Huizar is prejudiced by the government's consistent refusal to provide the phone in sufficient time for Mr. Huizar to copy and inspect it to prepare his defense.

The government has failed to meet its Rule 16 obligations and must be required to produce Mr. Huizar's phone.

### C.    The Government's Proffered Objections Are Unavailing

Despite Agent Civetti's own complete review of this evidence and the relevance of the cooperators' devices, the government invokes cursory and legally insufficient bases to oppose production during the meet and confer process. The government's reasons for withholding its communications with cooperators and their counsel are similarly unavailing. The government believes producing the exact forensic images of the devices and accounts would (1) reveal information about other political figures; (2) reveal personal information; (3) disclose information about ongoing investigations; (4) are outside of the scope of the warrants or waivers; (5) violate the cooperators' Fourth

---

discoverable within the meaning of Rule 16. *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013) (holding district court abused its discretion in denying motion to compel evidence related to a potential defense that was not advanced at trial because the "question is whether the information would have helped Doe in this endeavor, not whether the information would ultimately prove an entrapment defense").

[7] Electronic devices, notes, email communications, voice recordings, and other recorded documentation of communications are clearly tangible objects within Rule 16. *See, e.g.*, *United States v. Smith*, 101 F.3d 202, 209 (1st Cir. 1996) (defining "tangible" objects as those that are capable of being inspected, copied, or photographed).

Amendment rights; and (6) with regards to Mr. Huizar's phone, be premature because the government is seeking an additional warrant extension. Finally, concerning the requested documents and communications between cooperators and/or their counsel and the government, the government will produce that discovery, if necessary, by the August 19, 2022 *Brady*/*Giglio* and Jencks Statements deadline. Decl. of Counsel ¶¶8-14.

None of these provides grounds for the government to avoid complying with its discovery obligations. The defense did not agree to the August 19, 2022 *Brady*/*Giglio* deadline believing that the government would unnecessarily delay producing this material until that date. The government cannot continue to drag its feet in producing this material without impeding the defendants' ability to prepare their defense and risking delaying the trial in this case. The government's delay in producing the requested material is unreasonable given the volume and complexity of this allegations, defendants' need to review and investigate the materials, and the years which the government has had to prepare the material for production.

### 1.    The Protective Order and Rules of Evidence Adequately Protect Any Privacy Interests

The government's first two objections amount to an assertion that the requested discovery is too "sensitive" to produce. But to the extent those concerns are in fact legitimate, they necessarily yield to a criminal defendant's right to defend him or herself as trial approaches.

The appropriate mechanisms to deal with potential embarrassment to witnesses or other third parties are already in place. The parties entered into a protective order at the outset of this case (ECF No. 47), and to the extent the government believes that order insufficient, the solution is to amend it, not deny discovery. *See United States v. Savedoff*, 2017 WL 2305751, at *2–3 (W.D.N.Y. May 25, 2017) (granting motion to compel where materials included "very personal information" of a third party and amending the protective order). It should come as little surprise that discovery in political corruption prosecutions often refer to other uncharged figures, and for that reason courts entertain

17

protective orders. *See, e.g.*, *United States v. Smith*, 985 F. Supp. 2d 506, 529–30 (S.D.N.Y. 2013) (directing government to supplement its request for a protective order in political corruption case by providing the court with specific evidence of risk to third parties, rather than on "conclusory allegations"); *cf. United States v. O'Brien*, 2014 WL 204695, at *2 (D. Mass. Jan. 17, 2014) (unsealing records in corruption case which would have revealed names of thousands of applicants denied employment at probation office because "not all sensitive or potentially embarrassing information need be protected"). Hence, the overwhelming weight of cases discussing third-party privacy in the context of criminal discovery relate to whether a protective order is appropriate, not whether it should be produced at all. *See, e.g.*, *United States v. Cohen*, 366 F. Supp. 612, 624 (S.D.N.Y. 2019) (granting in part and denying in part media's motion to unseal discovery materials involving "the privacy interests of uncharged third parties named in the portions of the Materials relating to the Government's investigation"); *United States v. Luchko*, 2007 WL 1651139, at *10 (E.D. Pa. June 6, 2007) ("The protective order protects the privacy interests of uncharged persons, promotes the government's policy of open discovery and prevents unnecessary disclosure of investigative techniques.").

And the Court will be able to engage in the appropriate balancing between third-party interests and defendants' right to a defense at trial in connection with the pretrial submission of exhibits and testimony at trial. The Rules of Evidence will ensure that only relevant evidence that also meets the strictures of Rule 403 will be put into the public record, thereby protecting legitimate privacy interests while affording defendants the ability to meaningfully defend themselves.

Finally, to the extent the government asserts that it may withhold the evidence to protect the identities of the witnesses, no such concern is present here. As the Supreme Court explained in *Rovario v. United States*, the so-called "informant's privilege" is narrow and extinguishable:

> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-

18

enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, **once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable**.

353 U.S. 53, 59–60 (1957) (emphasis added). Even where the witness's identity is not yet known, "the privilege will give way where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *In re Perez*, 749 F.3d 849, 855–56 (9th Cir. 2014) (citing *Rovario*).

The identities of the cooperators whose devices and accounts are at issue in this motion are well known to the defense and the Court. Indeed, the related plea agreements are prominently marked as "cooperation plea agreement" and the non-prosecution agreements, at least one which the government linked to in a press release,[8] include statements about the parties' cooperation obligations. The only devices or accounts requested that belong to an individual whose identity has not yet been publicly revealed are those of Businessperson A, whose identity is well-known to all parties in the case.[9]

Accordingly, since the identity of the cooperators whose devices and accounts are being requested have been disclosed and are known, the privilege has no application to this case. There is simply no basis for the government to continue withholding the requested discovery.

---

[8] U.S. Dep't of Justice, Central District of California, *Press Release*, (Jan. 7, 2021), *available at* https://www.justice.gov/usao-cdca/pr/developer-agrees-pay-12-million-resolve-criminal-probe-executive-s-relationship-ex-la.

[9] Whatever instinctive appeal the government's concerns about cooperator identities might have had when this case first began are hollow now. The government has had plenty of time to figure out how to redact information it deems too sensitive to disclose or find a way to preserve the confidentiality of its witnesses. The government cannot keep lodging these same excuses now, when the deadline for substantive motions has passed and the parties are prepping for other pretrial deadlines.

**2.     As the Court Has Already Stated, Defendants' Right to Discovery Outweighs the Government's Interests in "Ongoing Investigations"**

The Court should again reject the government's generalized reference to "ongoing investigations" as a basis to avoid producing discovery. The non-existence of this "doctrine" was briefed in connection with defendants 940 Hill and Lee's Motion to Compel. (ECF No. 213 at 10.) And, in ruling on that motion, "in order to assist the Government in making any future disclosure decisions," the Court observed that it was "not persuaded that the case law supports the Government's position that its interest in protecting the integrity of an ongoing investigation outweighs" defendants' discovery rights. (09/20/21 Tr. Hearing on Motion to Compel at 30:18–23.) Nothing has changed since that time, and unsupported allusions to ongoing investigations still do not override defendants' right to discovery and prepare a defense.

**3.     The Government has Reviewed the Devices in Their Entirety and there are No Fourth Amendment Concerns**

The government's fourth and fifth reasons—that it cannot produce the exact duplicate forensic copies of the imaged devices belonging to the cooperators because the devices include information outside the scope of the warrant or waiver and because it would violate the cooperators' Fourth Amendment rights— similarly lack merit.

To begin with, the *defendants*' review of the cooperators' devices does not implicate the Fourth Amendment; only the government's warrantless search violates the Fourth Amendment. *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921) ("The Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous cases, its protection applies to governmental action."); *United States v. Wilson*, 13 F.4th 961, 963–64 (9th Cir. Sept. 21, 2021) (explaining that "the Fourth Amendment/s restriction of warrantless searches and seizures, which limits only governmental action") (citing *Burdeau*). Here, the government has admitted that it already reviewed the entire contents of the requested devices. The government confirmed that Agent Civetti reviewed each cooperator device in its entirety, beyond the scope of any warrant or

20

waiver. Decl. of Counsel, ¶13. To the extent there may have been a Fourth Amendment violation, it already occurred when Agent Civetti exceeded the scope of the warrants or waivers and reviewed the complete devices. *United States v. Sealey*, 830 F.2d 1028, 1032 (9th Cir. 1987) (the extent of a voluntary search is confined to the terms of the consent given). *See* § 22:203. Search outside scope of warrant, 8A Fed. Proc., L. Ed. § 22:203 ("A search that exceeds the scope of the terms of a warrant generally renders the subsequent seizure of items unconstitutional."). The defendants' review of the cooperator devices and accounts would not implicate the Fourth Amendment at all.

Second, as this Court knows, the government has no standing to assert a cooperators' Fourth Amendment rights. "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978) (internal citation omitted). None of the cooperators have asserted a violation of their Fourth Amendment rights with respect to the government's review of their devices.

Further, this argument is particularly frivolous with respect to Esparza's devices. Esparza signed a *complete* waiver allowing the government to search his devices. *See* Decl. of Counsel, ¶17, Ex. A. That waiver stated,

> (1) I have been asked by Special Agents of the Federal Bureau of Investigation to permit a **complete search of**: . . . . On November 27, 2018, my attorney Terrance Jones, provided the following items to SA Andy Civetti. I provided my consent to the FBI to search the **items**. . . . Apple iPhone 7 Plus, . . ., Apply iPhone 6s, . . ., Apple iPhone 6, . . . .
> (4) I authorize these agents to take any items which they determine may be related to their investigation.

*Id.* (emphasis added). The government then did a complete search of Esparza's phones. Esparza's waiver is determinative on this point and the exact forensic images of his devices are discoverable. The government attempts to cling to the later language in paragraph 4—that the government could *take* any *items* related to its investigation—as somehow narrowing the scope of the government's search. *Id.*, ¶20. That claim is baseless. The term "item" was used in the waiver to refer to the physical phones ("I provided my consent to the FBI to search the *items*"). Paragraph 4's waiver authorizing the government to "take any items . . . related to their investigation" refers to the phones,

21

which were then, pursuant to paragraph 1, completely searched.[10] The fact that the waiver included separate consent for the possession of an item and the search of the item is in line with the caselaw. *See Walter v. United States*, 447 U.S. 649, 654 (1980) ("The fact that FBI agents were lawfully in possession of the boxes of film did not give them authority to search their contents."). The government's professed reading of the waiver is inconsistent with the waiver's language and the law.

To the extent the government alleges that Esparza's Fourth Amendment rights would be violated, that is simply not true. The Fourth Amendment "does not apply . . . to situations in which voluntary consent has been obtained . . . from the individual whose property is searched . . . ." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Esparza gave the government his consent to search his phones, the government did a complete search of his phones, and the government should be required to produce the exact forensic images of those devices and accounts.

### 4.    The Government Should Return Mr. Huizar's Phone

The government has had years to review Mr. Huizar's phone. Rule 16 requires the government to permit defendants to inspect or copy, upon a defendant's request, items in the government's possession, custody, or control, items that are material to preparing the defense, and items obtained from or belonging to the defendant. F.R. Crim. P. 16. Mr. Huizar's phone is clearly an item obtained from and belonging to him. And Mr. Huizar has the right to use the item in preparing his defense.

The government has had more than sufficient time to attempt to obtain access to the phone. But in any case, there is no reason why the government could not provide Mr. Huizar's phone for inspection (per Rule 16) and allow the defense to make its own forensic image. The government's own efforts to break into the phone could continue while allowing the defense an opportunity to make a copy under agreed procedures to

---

[10]   On February 25, 2022, the defense asked the government to provide documentation of any conversations or emails with Esparza or his counsel surrounding the waiver that supports the governments' narrowing reading of the waiver. Decl. of Counsel, ¶21. As of this filing, the government has not responded to this request.

ensure the phone is not compromised. Instead, the government provides no timeline or deadline by when it will produce the phone to Mr. Huizar ahead of trial. At a minimum, the government should provide Mr. Huizar a complete forensic copy of the phone or allow Mr. Huizar an opportunity to copy it. The government must return the phone so Mr. Huizar can use it in his defense. The government's delay is impeding Mr. Huizar's ability to use this evidence in his defense.

### 5. There is No Reason to Delay the Production of Communications Between the Government and Cooperators and their Counsel

Finally, the Court should order the government to produce all communications between the government and the cooperators and their counsel as soon as possible.

As already outlined above, *supra* IV.B., the credibility of the cooperators is central to the government's case and discoverable. The government has taken the position that even though this evidence is in its possession and discoverable, it will not produce any of this evidence until the Court's August 19, 2022 deadline for *Brady* and *Giglio* materials. Decl. of Counsel, ¶14. And, as previously mentioned, the defense did not agree to the August 19, 2022 *Brady*/*Giglio* deadline believing that the government would unnecessarily delay producing this material until that date.

The defense has made a proper request for this discoverable evidence. While this discovery may also be considered *Brady* and *Giglio* material, the requested discovery is an important avenue of investigation for defendants to prepare a defense and separately discoverable under Rule 16. The government cannot simply rely on the *Brady*/*Giglio* deadline to withhold this Rule 16 discovery. As already explained, "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense," thus the production required under Rule 16 is "broader than *Brady*." *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013). But even if this discovery consisted of only *Giglio* and *Brady* material, the government must still produce it in time for the defense to make the most effective use of it for trial. *See United States v. Bundy*, 968 F.3d 1019, 1033, 1034 (9th Cir. 2020). The defense needs the production of this material

23

to develop defenses prior to trial and prevent any further trial delays. The government's refusal to produce this material until required pursuant to the *Brady*/*Giglio* deadline violates Rule 16 and is counter to the spirit of the Court's order that the government provide an open file to the defense. There is no justifiable reason to withhold this evidence other than an attempt to gain a strategic advantage or hinder the defense's investigation.

Importantly, the government has also taken the position that it will not produce its communications with cooperators *unless* a testifying witness has direct knowledge of these communications. *Id.*, ¶5, Ex. C at 3-4. And, "[t]o the extent the Hazens and/or [Company M] corporate representatives who personally participated in the negotiation of their respective company's resolution testify in the government's case-in-chief, the government will produce drafts of Non-Prosecution Agreements (and related factual basis documents) exchanged with defense counsel and substantive e-mail communications with defense counsel reflecting NPA negotiations." There is simply no basis for that position. This material, even if not *Brady* or *Giglio*, is discoverable under Rule 16. *See Stever*, 603 F.3d at 752 (Rule 16(a) "grants criminal defendants a broad right to discovery"); *United States v. Lucas*, 841 F.3d 796, 804 (9th Cir. 2016) (Rule 16 requires production of evidence "if the information requested would have 'helped' [the defendant]" prepare a defense). Refusing to produce the requested materials violates the government's broad discovery disclosure obligations under Rule 16. These communications are not privileged and squarely relate to this case. They are discoverable and the government must produce them.

Similarly, the government has refused to produce scheduling notices and other communications between the government and the cooperators and their counsel that the government deems "non-substantive." *Id.* These are non-privileged and relevant communications. These communications would allow the defense to know the extent to which the government was in contact with the cooperators and their counsel with regards to this case. That is clearly relevant to possible defenses. *See Kyles*, 514 U.S. at 449

24

(evidence that "attack[ed] the process by which the police gathered evidence and assembled the case" was discoverable). The government's determination of a document's "substantive" or "non-substantive" nature is meritless where it is clearly relevant. Again, there is no basis for the government's refusal to produce these materials in light of its broad discovery obligations under Rule 16.

The government cannot withhold these communications and the Court should order the government to produce the requested materials expeditiously.

## IV.CONCLUSION

For the reasons stated above, the defense respectfully requests an order compelling the government to produce the requested discovery.


Respectfully submitted,
CUAUHTEMOC ORTEGA
Federal Public Defender

Dated: March 3, 2022          /s/ *Carel Alé*
                             Carel Alé
                             Charles J. Snyder
                             Adam Olin
                             Deputy Federal Public Defenders
                             Attorneys for Jose Huizar

                             [And on Behalf of All Defendants]

25