1  TRACY L. WILKISON
   United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   MACK E. JENKINS (SBN: 242101)
4  Assistant United States Attorney
   Chief, Public Corruption & Civil Rights Section
5  VERONICA DRAGALIN (SBN: 281370)
   MELISSA MILLS (SBN: 248529)
6  CASSIE D. PALMER (SBN: 268383)
   Assistant United States Attorneys
7  Public Corruption & Civil Rights Section
        1500 United States Courthouse
8       312 North Spring Street
        Los Angeles, California 90012
9       Telephone:  (213) 894-2091/0647/0627/0363
        Facsimile:  (213) 894-7631
10      E-mail: Mack.Jenkins@usdoj.gov
                Veronica.Dragalin@usdoj.gov
11              Melissa.Mills@usdoj.gov
                Cassie.Palmer@usdoj.gov
12
   Attorneys for Plaintiff
13 UNITED STATES OF AMERICA

14              UNITED STATES DISTRICT COURT

15          FOR THE CENTRAL DISTRICT OF CALIFORNIA

16 UNITED STATES OF AMERICA,        No. CR 20-326(A)-JFW

17        Plaintiff,                GOVERNMENT'S OPPOSITION TO
                                    DEFENDANTS' MOTION TO COMPEL
18        v.                        PRODUCTION OF (1) COOPERATORS'
                                    DEVICES AND ACCOUNTS, (2)
19 JOSE LUIS HUIZAR, et al.         COMMUNICATIONS BETWEEN GOVERNMENT
                                    AND COOPERATORS AND/OR THEIR
20        Defendants.               COUNSEL, AND (3) JOSE HUIZAR'S
                                    PHONE (CR 381); DECLARATION OF
21                                  VERONICA DRAGALIN; EXHIBITS

22                                  Date:     April 25, 2022
                                    Time:     8:00 a.m.
23                                  Location: Courtroom of the Hon.
                                              John F. Walter
24

25

26      Plaintiff United States of America, by and through its counsel

27 of record, the United States Attorney for the Central District of

28 California and Assistant United States Attorneys Mack E. Jenkins,

1   Veronica Dragalin, Melissa Mills, and Cassie D. Palmer hereby files

2   its Opposition to Defendants' Motion to Compel Production of (1)

3   Cooperators' Devices and Accounts, (2) Communications Between

4   Government and Cooperators and/or Their Counsel, and (3) Jose

5   Huizar's Phone, filed on behalf of all defendants (CR 381).

6       This Opposition is based upon the attached memorandum of points

7   and authorities, the Declaration of Veronica Dragalin and attached

8   exhibits, the files and records in this case, and such further

9   evidence and argument as the Court may permit.

10  Dated: March 31, 2022            Respectfully submitted,

11                                   TRACY L. WILKISON
                                     United States Attorney
12
                                     SCOTT M. GARRINGER
13                                   Assistant United States Attorney
                                     Chief, Criminal Division
14

15
                                     _____
16                                   MACK E. JENKINS
                                     VERONICA DRAGALIN
17                                   MELISSA MILLS
                                     CASSIE D. PALMER
18                                   Assistant United States Attorneys

19                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

20

21

22

23

24

25

26

27

28

                                     2

**TABLE OF CONTENTS**

I.    INTRODUCTION.......................................................1

II.   RELEVANT FACTUAL BACKGROUND........................................2

      A.   Government's Extensive Early Discovery......................2

      B.   Meet and Confer............................................4

      C.   Defendants' Motion to Compel...............................5

      D.   Defendant HUIZAR's Phone...................................6

III.  LEGAL STANDARD....................................................7

IV.   ARGUMENT..........................................................9

      A.   Defendants Have Failed to Establish They Are Entitled
           to Access Entire Personal Phones and Personal Email
           Accounts of Nine Individuals...............................9

           1.   Information That Is Not Seized Pursuant to
                Warrant or Owner Consent Is Not in the Possession
                of the Government....................................10

           2.   Defendants Have Failed to Make a Threshold
                Showing of Materiality...............................19

      B.   Communications with Defense Counsel for Fourteen
           Individuals and Entities..................................21

V.    CONCLUSION.......................................................24

**TABLE OF EXHIBITS**

| Exhibit | Description | Page(s):Line(s) |
|---------|-------------|-----------------|
| 1 | November 5, 2018 Search Warrant Return | 2:24, 2:26, 3:25, 18:5 |
| 2 | January 27, 2021 FBI Report | 3:12, 9:26, 17:17 |
| 3 | March 11, 2022 Email from Counsel for George Esparza | 3:3, 17:19 |
| 4 | March 10, 2022 Email from Counsel for Justin Kim | 11:5, 13:22 |
| 5 | March 10, 2022 Email from Counsel for George Chiang | 11:5, 13:22 |
| 6 | March 10, 2022 Email from Counsel for Ricky Zheng | 11:5, 13:22, 14:6 |
| 7 | March 10, 2022 Email from Counsel for Shawn Kuk | 11:5, 13:22 |
| 8 | March 15, 2022 Email from Counsel for Executive M | 11:5, 13:22 |
| 9 | March 10, 2022 Email from Counsel for Businessperson A | 11:5, 13:22 |
| 10 | March 15, 2022 Email from Counsel for John Carlin | 11:5, 13:22 |

**TABLE OF AUTHORITIES**

**Cases**                                                                **Page(s)**

Brady v. Maryland,
   373 U.S. 83 (1963) .......................................... 7

Florida v. Jimeno,
   500 U.S. 248 (1991) ........................................ 16

Giglio v. United States,
   405 U.S. 150 (1972) ......................................... 7

Jencks v. United States,
   353 U.S. 657 (1957) ........................................ 24

Morris v. Ylst,
   447 F.3d 735 (9th Cir. 2006) ........................... 22, 23

Pennsylvania v. Ritchie,
   480 U.S. 39 (1987) .......................................... 8

Riley v. California,
   573 U.S. 373 (2014) ........................................ 13

United States v. Alvarez,
   358 F.3d 1194 (9th Cir. 2004) .............................. 8

United States v. Anderson,
   472 F.3d 662 (9th Cir. 2006) ............................... 6

United States v. Bagley,
   473 U.S. 667 (1985) ....................................... 7-8

United States v. Basher,
   629 F.3d 1161 (9th Cir. 2011) ............................. 16

United States v. Bryan,
   868 F.2d 1032 (9th Cir. 1989) .............................. 9

United States v. Cano,
   934 F.3d 1002 (9th Cir. 2019) .............................. 9

United States v. Collins,
   409 F. Supp. 3d 228 (S.D.N.Y. 2019) ....................... 11

United States v. Doe,
   705 F.3d 1134 (9th Cir. 2013) ............................. 19

United States v. Estime,
    No. 19-CR-711 (NSR), 2020 WL 6075554 (S.D.N.Y. Oct. 14, 2020) .. 6

United States v. Jones,
    612 F.2d 453 (9th Cir. 1979) ................................. 8

United States v. Kohring,
    637 F.3d 895 (9th Cir. 2011) ................................ 23

United States v. Liquid Sugars,
    158 F.R.D. 466 (E.D. Cal. 1994) ............................. 20

United States v. Lucas,
    841 F.3d 796 (9th Cir. 2016) ............................. 8, 24

United States v. Mandel,
    914 F.2d 1215 (9th Cir. 1990) ............................... 19

United States v. Mayes,
    917 F.2d 457 (10th Cir. 1990) ............................... 24

United States v. McLeod,
    755 F. App'x 670 (9th Cir. 2019) ............................ 3

United States v. Mills,
    641 F.2d 785 (9th Cir. 1981) ................................. 8

United States v. Muniz-Jaquez,
    718 F.3d 1180 (9th Cir. 2013) ............................... 19

United States v. Phillips,
    854 F.2d 273 (7th Cir. 1988) ................................ 24

United States v. Salyer,
    271 F.R.D. 148 (E.D. Cal. 2010) ......................... 12, 16

United States v. Sealey,
    830 F.2d 1028 (9th Cir. 1987) ............................... 16

United States v. Stever,
    603 F.3d 747 (9th Cir. 2010) ................................. 7

United States v. W.R. Grace,
    401 F. Supp. 2d 1069 (D. Mont. 2005) ........................ 9

Weatherford v. Bursey,
    429 U.S. 545 (1977) ......................................... 7

Zamani v. Carnes,
    491 F.3d 990 (9th Cir. 2007) ................................. 6

2

**Statutes**

18 U.S.C. § 3500 ............................................. 7, 8

**Federal Rules**

Fed. R. Crim. P. 16 ........................................ passim

Fed. R. Crim. P. 17......................................... 15

Fed. R. Crim. P. 41 .......................................... 6

Fed. R. Evid. 702 ............................................ 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendants' motion to compel is both confused and confusing, but the issues are straightforward.[1]  First, the government has no legal authority or access to information beyond the scope of search warrants and consents, and therefore the unseized data on the devices and accounts is not within the possession, custody, or control of the government.  Unsurprisingly, counsel for all the affected individuals have confirmed in writing that their clients assert their Constitutional rights with respect to the personal and irrelevant information sought by this motion and object to the defense, the government, or anyone else accessing it in this manner in order to engage in defendants' requested fishing expedition.

Second, even assuming the unseized data on these devices and accounts is in the possession, custody, or control of the government, defendants have offered utterly no showing, much less made the required threshold showing, of materiality for this information, as required by settled law.  Defendant's stated position rejecting that requirement —— "Nothing more than a simple request is needed to trigger the defendant's right to discovery" —— is flatly incorrect under the law and misapprehends how criminal investigations operate and collect evidence.  Instead of holding that the government must produce any and every item demanded by a defendant and thereby trump all other Constitutional rights and safety interests of third

---

[1] After a successful meet and confer, counsel for defendant JOSE HUIZAR has confirmed that defendants will withdraw the motion without prejudice with respect to defendant HUIZAR's phone.  Thus, only two categories of disputed items remain.

parties, along with disregarding legitimate investigative needs, the law has long recognized that a defendant must first make a threshold showing of materiality.  Contrary to their self-serving suggestion, the determination of materiality is not for a defendant alone to make, and generalized facts and conclusory allegations are insufficient to meet this requirement.

Third, defendants' motion cites no legal authority for holding that <u>all</u> communications between prosecutors and counsel for other individuals involved in this case are subject to discovery under Rule 16, <u>Brady</u>/<u>Giglio</u>, or the Jencks Act.  The government will continue to comply with its discovery obligations, including producing <u>Brady</u>/<u>Giglio</u> and Jencks Act material by the stipulated deadlines imposed by this Court.

## II.  RELEVANT FACTUAL BACKGROUND

### A.  Government's Extensive Early Discovery

As the Court and the defendants are aware, the government has produced very voluminous early discovery, including Rule 16, <u>Brady</u>/<u>Giglio</u>, and Jencks statements, well in advance of statutory deadlines and the stipulated deadlines in the Court's trial order.

For example, the government obtained numerous search warrants in the overall investigation, including a search warrant for George Esparza's digital devices, which authorized the seizure of broad categories of items covering a period of more than five years. Dragalin Decl. ¶ 3; Gov. Ex. 1 (11/5/2018 Esparza search warrant). On November 7, 2018, pursuant to the search warrant, the government seized two cellphones and a laptop from Esparza.  (<u>Id</u>.)  On November 27, 2018, as part of his cooperation with the government, Esparza's attorney provided three additional iPhones to the FBI to be searched

pursuant to the original search warrant, rather than requiring the government to obtain a new search warrant to seize these three additional devices.[2]  (Gov. Ex. 3 (3/11/22 email from Esparza's counsel confirming that Esparza agreed to turn over three additional cell phones and "consent to their search and seizure consistent with the parameters of the underlying warrant, and no more").)  At the FBI's request, Esparza later executed a limited "Consent to Search" the three additional devices, to confirm in writing that he had "provided my consent to the FBI to search the items" through his attorney on November 27, 2018.  (Id.)  The FBI then searched all of Esparza's digital devices, pursuant to the original search warrant, as reflected in the agent's report of the search.  See Gov. Ex. 2 (1/27/21 FBI report: "Consensually provided phones were also searched and evidence seized pursuant to the Omnibus search warrant authorized in November 2018." (emphasis added)).  As authorized by the search warrants and as customary, agents created a complete mirror of electronically stored information to safeguard the integrity of the evidence that was lawfully obtained and to authenticate it at trial.

The government produced the following evidence seized pursuant to search warrants from Esparza's digital devices and email account: (1) over 72,800 pages of content from Esparza's five phones; (2) native versions of the Cellebrite[3] reports for Esparza's five

---

[2] The original search warrant was executed on November 7, 2018, and the time period to execute the original search warrant had already expired.  See Dragalin Decl. ¶ 3, Gov. Ex. 1 (11/5/18 Esparza search warrant).

[3] Defendants' claim that the Cellebrite report is a "format the defendants cannot use to locate additional materials" is non-sensical and misleading.  (CR 381 at 12.)  The government produced the data seized from digital devices in PDF form, and then, upon defendants' request for this specific purpose, also produced the materials in the
*(footnote cont'd on next page)*

phones; (3) a native report of Esparza's laptop; and (4) over 8,300 pages of Esparza's personal emails.  In addition, the government has produced audio recordings and transcripts of Esparza's recorded interviews with the FBI, reports of Esparza's proffer sessions with the USAO and FBI, including agents notes of the interviews and exhibits used during the interviews, additional records Esparza has continued to provide during his cooperation, as well as certain email communications between Esparza's counsel and the prosecution team. Dragalin Decl. ¶ 5.  In sum, the government provided a wealth of directly relevant impeachment information for Esparza significantly in advance of the trial in this matter.  The government produced similar discovery for the other individuals identified in defendants' motion also well in advance of trial.  Framed by this context, defendants' motion is not just legally unsupported but also unnecessary.

B.   **Meet and Confer**

On April 28, 2021, the government asked defendants to make a threshold showing of materiality for, among other things, their request for the full imaged devices and attorney communications.  (CR 381-4, Def. Ex. C (4/28/21 Government Letter) at 2, 5.)  They failed to respond then, and have, to date, failed to make any showing of

native Cellebrite format, which comes with a reader that allows the defense to view all of the content and metadata extracted from the digital devices in the same manner done by the government.  The Cellebrite extraction tool and software are commonly used by federal law enforcement and routinely produced to defendants in discovery in this district, the Ninth Circuit, and across the country, and commonly introduced in criminal trials.  See, e.g., United States v. McLeod, 755 F. App'x 670, 673 (9th Cir. 2019) ("In short, Detective Jackson testified about his use and interaction with Cellebrite and how he extracted data from one of the victim's phones in this case. We have previously allowed testimony similar to Detective Jackson's testimony without requiring that the testimony meet Rule 702's expert testimony requirements.").

materiality.  Although defendant HUIZAR purports to make the motion on behalf of all defendants, no counsel for any other defendant participated in any meet and confer efforts with the government on this subject before the filing of this motion, nor has any defendant ever made any threshold showing of materiality to their defenses.

The government will continue to comply with its going discovery obligations and to make decisions prospectively about whether information is subject to discovery under Brady/Giglio.  In addition, as the Court ordered in denying defendants' earlier motion to compel discovery, the government will confirm in a declaration that it has produced all Brady/Giglio material in advance of trial.  (CR 265, 9/20/21 Hrg. Tr. at 29:24-30:6.)

C.   **Defendants' Motion to Compel**

More than a year after first requesting this information, defendants filed a boilerplate motion to compel discovery that does not address any of the issues raised by the government and is not remotely tailored to the issues in dispute.  These issues are: (1) whether all unseized, out-of-scope data housed in personal cell phones, email accounts, and cloud accounts on which the government previously conducted searches pursuant to warrants and/or limited consents from the individuals who own the devices or accounts are still within the possession, custody, or control of the government; (2) whether defendants are entitled to unfettered access to the private lives of nine individuals via their personal cellphones, email accounts, and cloud accounts; and (3) whether the government has an obligation to produce all communications (whether substantive or not) between prosecutors and attorneys for fourteen individuals

1  and entities, some of whom are only peripherally related to this case
2  and may relate to other investigations.

3      Defendants' motion brims with boilerplate discussion on
4  irrelevant issues like the proper scope of the informant privilege,
5  but it repeatedly fails in its key task of addressing the relevant
6  law and explaining how it entitles defendants to nearly limitless
7  troves of non-pertinent and highly sensitive data implicating the
8  privacy interests and Constitutional rights of third parties.
9  Defendants have not cited a single case in which a court has granted
10 the broad discovery requests they seek, and the government has found
11 none.[4]

12     **D.   Defendant HUIZAR's Phone**

13     After a successful meet and confer, counsel for defendant HUIZAR
14 has confirmed that defendants will withdraw the motion without
15 prejudice with respect to defendant HUIZAR's phone.  (Dragalin Decl.
16 ¶ 2.)  Specifically, after the filing of defendants' motion, on March
17 10, 2022, the government offered to provide a copy of the hard drive
18 previously disclosed as evidence item 1B200, which contained an
19 extraction of defendant HUIZAR's phone created by his prior counsel,
20 if current counsel confirmed with prior counsel that they did not
21 have a copy of the hard drive.  (Id.)  Although defendant HUIZAR's

---

23
24     [4] To the extent defendants make new arguments or rely on new
   authority in the reply, such arguments should be deemed waived.  See,
25 e.g., Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) (finding
   district court did not commit clear error in failing to consider
26 arguments raised for the first time on reply because it "need not
   consider arguments raised for the first time in a reply brief");
27 United States v. Anderson, 472 F.3d 662, 668 (9th Cir. 2006)
   (recognizing the general principle that arguments raised for the
   first time in a reply brief are waived).  Alternatively, if the Court
28 elects to entertain such new arguments, the government requests leave
   to address them in a sur-reply.

counsel never confirmed whether prior counsel retained a copy, on March 14, 2022, the government provided a copy of evidence item 1B200 to defendant HUIZAR.  (Id.)  The government also gave defendant HUIZAR two proposals for giving him access to the physical phone. (Id.)  Counsel for defendant HUIZAR later confirmed they would withdraw the motion without prejudice with respect to the phone. Accordingly, this issue is moot.[5]

## III. LEGAL STANDARD

"There is no general constitutional right to discovery in a criminal case, and Brady did not create one."  Weatherford v. Bursey, 429 U.S. 545, 559 (1977).  There are three sources of the government's discovery obligations in a criminal case.

*First*, Rule 16 of the Federal Rules of Criminal Procedure establishes guidelines for pretrial production by the government of seven categories of material, including documents and objects "within the government's possession, custody, or control" that are "material to preparing the defense," that the government intends to use in its

_____

[5] Counsel for other defendants have not expressed a position on this issue.  To the extent counsel for other defendants do not join in defendant HUIZAR's withdrawal of his request for a copy of his phone, they have failed to make a showing that they are entitled to this discovery.  See, e.g., United States v. Estime, No. 19-CR-711 (NSR), 2020 WL 6075554, at *16 (S.D.N.Y. Oct. 14, 2020) (only "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return") (citing Fed. R. Crim. P. 41(g)).

It is unclear whether defendant HUIZAR intended, by this motion on behalf of other defendants, to compel the government to provide a copy of his personal cell phone to all other defendants in this case. To the extent that was defendant HUIZAR's aim, he now has a copy and is free to provide it to his co-defendants for their own use.  In the event defendant HUIZAR declines to do so ⎯ a position that might call into question the logic of some of his arguments of entitlement to the production of other individuals' personal cell phones that were searched by the government ⎯ the government is not obligated to produce it for the reasons set forth herein.

case-in-chief at trial, or that was obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E). "A defendant must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense." United States v. Stever, 603 F.3d 747, 752 (9th Cir. 2010) (internal quotation marks and citation omitted). Rule 16(a)(2) excludes from pretrial discovery "statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500 [Jencks Act]." Fed. R. Crim. P. 16(a)(2).

*Second*, under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), the government must turn over evidence in its possession that is favorable to the defense or that may be used by the defense for impeachment purposes. Specifically, Brady "requires disclosure only of evidence that is both favorable to the accused and material either to guilt or to punishment." United States v. Bagley, 473 U.S. 667, 674 (1985) (citations omitted). As the Ninth Circuit has held:

> It is the government, not the defendant or the trial court, that decides *prospectively* what information, if any, is material and must be disclosed under Brady.... And, as the Supreme Court has explained, Brady does not permit a defendant to sift through information held by the government to determine materiality. A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files. Although the eye of an advocate may be helpful to a defendant in ferreting out information, **this Court has never held ... that a defendant alone may make the determination as to the materiality of the information.** Settled practice is to the contrary.

United States v. Lucas, 841 F.3d 796, 807 (9th Cir. 2016) (italicized emphasis in original, bolded emphasis added) (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 59-60 (1987)).

8

*Third*, under 18 U.S.C. § 3500 (the Jencks Act), statements by a government witness that relate to the subject matter of the witness's testimony are required to be disclosed to the defense after the witness has testified.  "When the defense seeks evidence which qualifies as both Jencks Act and <u>Brady</u> material, the Jencks Act standards control."  <u>United States v. Alvarez</u>, 358 F.3d 1194, 1211 (9th Cir. 2004) (quoting <u>United States v. Jones</u>, 612 F.2d 453, 455 (9th Cir. 1979)).  Courts do not have the authority to compel the government to produce Jencks Act statements before a witness testifies.  <u>See</u> <u>United States v. Mills</u>, 641 F.2d 785, 789-90 (9th Cir. 1981).

## IV.  ARGUMENT

### A.  Defendants Have Failed to Establish They Are Entitled to Access Entire Personal Phones and Personal Email Accounts of Nine Individuals

Defendants seek "[e]xact duplicate forensic copies of the imaged devices and email, cloud storage, or any accounts in the government's possession" of nine individuals.  (CR 381 at 2.)  The government obtained search warrants for and subsequently created forensic copies of imaged devices and accounts for seven of those individuals pursuant to search warrants (George Esparza, Justin Kim, Ricky Zheng, George Chiang, Shawn Kuk, John Carlin, and Executive M).  For Businessperson A, the government searched a cellphone pursuant to a limited consent for items "related to their investigation," which agents identified by following the "items to be seized" in the November 2018 omnibus search warrant.  (CR 381-6, Def. Ex. E (Businessperson A consent); Gov. Ex. 2 (1/27/21 FBI report).)  The government never obtained search warrants or consents for Morrie

Goldman's digital devices or accounts and has no such items in its possession.  (Dragalin Decl. ¶ 6.)

      1.   <u>Information That Is Not Seized Pursuant to Warrant or Owner Consent Is Not in the Possession of the Government</u>

Information is "in the possession of the government" if the prosecutor "has knowledge of and access to the documents sought by the defendant." <u>United States v. Bryan</u>, 868 F.2d 1032. 1036 (9th Cir. 1989); <u>United States v. Cano</u>, 934 F.3d 1002, 1023 (9th Cir. 2019) (same).[6]

The government obtained court-authorized search warrants for digital devices and personal email and cloud accounts for various individuals in this investigation.  The government then had legal authority to access and search the content on those devices and accounts for a limited time to seize only those items authorized by the respective search warrants (i.e., the "items to be seized").  All of the data seized consistent with limitations of the warrant has been produced in discovery in this case.  The government has no legal authority to re-access the digital devices or accounts, as the search warrants have long expired, and defendants have offered no basis for the government to seek re-access of the devices/accounts.

Similarly, for two individuals who provided limited consents to search their respective digital devices, the government searched the devices pursuant to those consents, seized evidence within the scope

---

    [6] <u>Brady</u>'s "possession" element "is treated as coextensive with that of Rule 16." <u>Cano</u>, 934 F.3d at 1023 n.16 (citing <u>United States v. Bryan</u>, 868 F.2d <u>1032</u>, 1037 (9th Cir. 1989); and <u>United States v. W.R. Grace</u>, 401 F. Supp. 2d 1069, 1076 (D. Mont. 2005) ("Whether exculpatory information is in the government's possession for <u>Brady</u> purposes is measured by the same ... test used under Rule 16(a)(1)(E) for discovery.")).

of the consents, and produced that information in discovery in this
case.  The government has no authority to re-access the digital
devices beyond the scope of the limited consents that were provided,
and defendants have offered no basis for the government to seek re-
access of the devices.  (See Dragalin Decl. ¶ 7; Gov. Ex. 3-10
(written confirmations from counsel for eight individuals objecting
to further search of devices and accounts beyond scope of search
warrants and/or limited consents).)  Nor can an individual's limited
consent reasonably be construed as ongoing consent for any members of
any defendants' legal teams —— or the defendants themselves —— to
comb through his entire phone or digital account looking for any
unspecified information that may serve defendants' stated purpose of
finding mud to throw at that individual.  See CR 381 at 17
(condemning those who cooperate with criminal investigations as
"notoriously unreliable" and asserting that this inherent
untrustworthiness justifies giving criminal defendants broad access
to what they vaguely describe as "information about informants").[7]

Despite being made aware of these facts and arguments as early
as April 28, 2021, defendants have failed to present any legal
authority for their position that they are entitled to evidence
beyond the scope of search warrants and beyond the scope of limited

---

[7] Although defendants styled their motion as one to compel
"*cooperators*' devices and accounts" and "communications between the
government and *cooperators* and/or their counsel," their definition of
"cooperator" seems to include any person who participated in
voluntary interviews with the government, even when the person had
limited information about the allegations in the indictment (as is
evident from produced reports of interviews).  As discussed herein,
defendants have not met their burden of showing materiality even for
true cooperators who have signed cooperation plea agreements, let
alone for those individuals who were, at best, peripheral to the
overall investigation and, in any event, are not "notoriously
unreliable."

consents provided by third parties —— and none exists.  To the contrary, courts presented with such arguments have repeatedly come to the commonsense conclusion that defendants cannot compel the government to violate other people's Fourth Amendment rights simply to satisfy a defendant's curiosity.

In United States v. Collins, 409 F. Supp. 3d 228, 244 (S.D.N.Y. 2019), the defendant moved to compel the government to either review the devices and accounts belonging to third parties that were obtained during the investigation and produce any Brady or Rule 16 material, or to produce the full devices and accounts to the defense.[8]  The court observed that the government, having completed its search pursuant to a warrant, "does not have the legal authority to go back and search materials that are non-responsive, i.e., outside the scope of the search warrant." Id.  The court further noted that, like defendants here, the defendants "do not cite any case law to support their proposition that the Government's Brady obligation gives it the legal right to search [a third party's] iCloud data over [the third party's] objection, nor do Defendants explain how such a search would not be inconsistent with [the third party's] Fourth Amendment rights." Id.  The court thus concluded that the government had already met its Brady obligation in searching the data pursuant to search warrants, and that the defendants had provided an insufficient justification for their argument that the government was obligated to search the objecting third party's data. Id.  Similarly, in United States v. Salyer, 271 F.R.D. 148, 165-66

---

[8] Defendants here go further than the defendants in Collins, insisting that only their own review of the devices and accounts will suffice.

1   (E.D. Cal. 2010), the court denied the defendant's request for access

2   to "a forensic copy of any computer" and access to the personal email

3   accounts and any personal computers used by cooperating government

4   witnesses, holding that the information was not in the possession of

5   the government and lacked materiality.

6       Here, defendants have moved to compel the government to provide

7   complete forensic copies of the imaged devices and emails and cloud

8   storage accounts for nine individuals solely for their review.  In so

9   doing, they turn Brady on its head as they anoint themselves the sole

10  arbiter on materiality yet fail to identify any cognizable metric to

11  conduct their exclusive and intrusive analysis.  Because the

12  government does not have legal authority to access this information,

13  it is not subject to discovery.

14                        *a.   Granting Defendants' Demands Would Violate the*

15                              *Constitutional and Privacy Rights of Third*
                                *Parties*

16      Counsel for the affected individuals have each objected to

17  defendants' novel and unsupported request to go on a fishing

18  expedition into their most private and personal information, which

19  may be expected to include communications with their spouses,

20  intimate partners, children, and attorneys; private photographs;

21  financial information; health information; and innumerable other

22  personal and private matters.  (See Dragalin Decl. ¶ 7; Gov. Ex. 3-

23  10); Riley v. California, 573 U.S. 373, 393-94 (2014) (explaining

24  that cellphones have "immense storage capacity" that may contain

25  "every piece of mail [people] have received for the past several

26  months, every picture they have taken, or every book or article they

27  have read," which can allow the "sum of an individual's private life

28  [to] be reconstructed").  For example, counsel for Ricky Zheng noted

that "[t]he wholesale disclosure of Mr. Zheng's private materials, as requested in the motion, would be a grievous violation of Mr. Zheng's privacy rights and privileges.  These include, for example, the spousal and attorney-client privileges, rights under HIPAA, the First Amendment right to be free from intrusion into private beliefs, and the fundamental 'the right to be left alone.'" (Gov. Ex. 6.)

Defendants argue that the protective order in this case would adequately protect "any privacy interest" implicated by their demand for unlimited access to entire phones and email accounts.  The government disagrees, for reasons that are apparent to any person with a personal cell phone, a personal email account, and a desire not to hand over the keys to those records to multiple criminal defendants and all of their respective lawyers, paralegals, secretaries, technical support personnel, consultants, and various other individuals involved in their defense.  See, e.g., Riley, 573 U.S. at 395-97 (noting that modern smart phone storage capacity "translates to millions of pages of text, thousands of pictures, or hundreds of videos," exposing one to "far more [information] than the most exhaustive search of a house").  Importantly, the protective order protects only the documents themselves, not the discussion of their private contents with others.  Moreover, even under a protective order, if such materials are included in litigation they could become part of an indefinite court record, which adds to the anxiety and dread of anyone forced to surrender such a broad swath of privacy protections.

Contrary to defendants' representation to this Court, the government did not confirm that agents reviewed the entire contents of the devices "*beyond* the scope of any warrant or waiver." (CR 381

at 20-21) (emphasis added).  Like defendant HUIZAR's unsuccessful

motion to suppress items seized pursuant to an email search warrant,

this argument again demonstrates a lack of understanding of basic

search and seizure law.  The "scope" of the search warrants and

consents expressly allowed agents to *search* the entire devices, but

to *seize* only the items listed in Attachment B, which the agents

did.[9]  There has been no Fourth Amendment violation in this case by

the government, and the government's prior search of their devices

and accounts did not somehow divest these individuals of their

Constitutional and privacy rights.

Defendants further argue that because the demand for these

materials is being made by the defense, rather than by the

government, "there are no Fourth Amendment concerns."  (CR 381 at 20-

22.)  But defendants are demanding materials originally seized by the

government pursuant to a federal court order, which unquestionably

implicates the Fourth Amendment, as well as materials that they want

the government to compel from third parties pursuant to cooperation

agreements.[10]  Once again, defendants cite no law in support of this

novel proposition that the government's critical involvement in

---

[9] The same is true for any search warrant of a personal
residence, which allows investigators to search any and all
reasonable places in that private home in order to seize a particular
piece of evidence.  The fact that many rooms searched by
investigators contained nothing of evidentiary value and thus nothing
was seized therefrom, does mean the investigators went "beyond the
scope" of the warrant.

[10] Under defendants' theory, while the government's original
search was limited by court-authorized search warrants, there would
be no limit to their discretion to search these devices and email
accounts for whatever they see fit because the Fourth Amendment only
applies to government searches.  Nor would defendants be required to
follow the strictures of Rule 17 subpoenas, over which this Court has
supervision, and which again contains limitations that protect third-
party rights.

obtaining and producing this material against the will of third parties would not violate the Fourth Amendment.

In light of defendants' stated theory, one might expect them to concede that because the government at some point reviewed the full content of defendants HUIZAR and CHAN's devices and accounts, "there are no Fourth Amendment concerns" (CR 381 at 20-22), and thus those defendants' personal information is now subject to disclosure to all co-defendants in this case (as well as to defendants in other related cases), who may argue that they should be entitled to peruse defendants' devices and accounts for "information" they may find helpful.  The same can be said for cellphones belonging to General Manager E and Employee E.  Of course, defendants make no such concessions.  Although the government has imaged those devices pursuant to search warrants in precisely the same manner as the others sought by defendants, it is telling that defendants do not ask to infringe on their own privacy rights or those of certain former SZNW officers and employees.  They take the unsupported legal position only as to certain devices belonging to purported "cooperators" who may testify against them, not their own devices or those belonging to their allies, despite that such devices may also contain similar information to benefit other defendants.

Third parties do not lose their Constitutional rights simply because the government obtained legal process to obtain certain information from them.  "[S]imply because the United States obtained documentary information as a result of subpoena or search warrant does not place all documents of those entities or persons within the possession of the government for defendant's further requests.  The need for formal process in the acquisition of documents is the

16

antithesis of 'access' as defined by the above cases."  _Salyer_, 271 F.R.D. 148, 156.

Individuals also do not abandon all their rights when they agree to cooperate with the government.  Defendants' own motion recognizes that "the extent of a voluntary search is confined to the terms of the consent given."  (CR 381 at 21 (citing _United States v. Sealey_, 830 F.2d 1028, 1032 (9th Cir. 1987)).)  Consent must be "unequivocal and specific."  _United States v. Basher_, 629 F.3d 1161, 1167 (9th Cir. 2011).  The standard for measuring the scope of a consent under the Fourth Amendment is that of "objective reasonableness" -- what the typical reasonable person would have understood by the exchange between the individual and law enforcement.  _Florida v. Jimeno_, 500 U.S. 248, 251 (1991).

Here, as part of their cooperation with the government in this investigation, Businessperson A and George Esparza gave limited consents to search their phones.  The scope of Esparza's consent was limited to the terms of the pending search warrant.[11]  (_See_ Gov. Ex. 2 (FBI report confirming that consensually provided phones were searched pursuant to omnibus search warrant), Gov. Ex. 3 (counsel for

---

[11] Defendants' claim that the waiver was unlimited betrays the same lack of understanding of basic search and seizure law that has plagued them throughout this case.  Defendants interpret Esparza's waiver, which allowed the government to _search_ specific phones and to "take any items which they determine may be related to their investigation" to mean that the government could "take" those phones.  (CR 381 at 21-22.)  Defendants continue to fail to understand that (1) _searching_ and (2) _taking_ (or _seizing_) are two separate procedures governed by two different processes.  Whether pursuant to a warrant or to a limited consent, the government was permitted (1) to search the entire device, and (2) to take or seize _only_ those items (i.e., emails, texts) within that device that are within the scope of the warrant or consent.  Just as defendants are not free to rummage through homes once _searched_ pursuant to warrant for items not _seized_ by the government, they are not free to rummage through entire devices merely because the government once had lawful access to them.

1    Esparza confirming that "Mr. Esparza does not now, as he did not

2    then, consent to the search of those three cell phones and his email

3    accounts beyond the scope of the search warrant parameters").)   The

4    "items" Esparza authorized agents to take were the same "ITEMS TO BE

5    SEIZED" set forth in the search warrant.  (Gov. Ex. 1 (Esparza search

6    warrant) at 5.)   The government searched the phones pursuant to those

7    limited consents, seized the items authorized by the consents as

8    defined in the omnibus search warrant, and produced that information

9    to the defense.   Defendants have made no showing for why they are

10   entitled to anything beyond the produced discovery.

11        Esparza and other individuals who signed cooperation plea

12   agreements with the government similarly did not abandon all of their

13   rights.   The government has not asked cooperating defendants to waive

14   their rights with respect to their digital devices and personal email

15   accounts beyond what was necessary to fairly adjudicate their

16   respective cases and move the identified investigation forward.

17   Defendants cite no authority that gives them a right to compel the

18   government to effectively further punish cooperators by forcing such

19   a blanket surrender of their rights as a condition of their

20   cooperation plea agreements, untethered to any legitimate theory of

21   discoverability.   There is no support in the law for treating a

22   cooperator's property and information as within the government's

23   possession, custody, or control, nor should there be.   In addition to

24   the unwarranted infringements on the rights of the people at issue in

25   this case, defendants' proposed radical change in the law would

26   drastically chill cooperation in future criminal cases.   Most

27   rational people would decline to cooperate with a criminal

28   investigation if doing so meant they were automatically required to

surrender all of their most private and sensitive data for inspection and use by criminal defendants and their legal teams for whatever broad purpose they speculated might help their defense.[12]  This inevitable consequence would be contrary to the interests of justice.

        2.  <u>Defendants Have Failed to Make a Threshold Showing of Materiality</u>

Even if the Court rules that the full imaged devices and full accounts are within the government's possession, custody, and control, defendants' request fails for a separate reason: they have failed to make a threshold showing of materiality.  "To receive discovery under [Rule 16], the defendant must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense."  <u>United States v. Doe</u>, 705 F.3d 1134, 1150 (9th Cir. 2013) (citations omitted).  "Neither a general description of the information sought nor conclusory allegations of

---

     [12] Defendants implicitly argue that, for persons who have entered into cooperation plea agreements with the government, all of their personal information is in the government's possession, custody, or control because the government can simply order them to waive their Constitutional and privacy interests in that material.  However, defendants' motion does not appear to spell out that point.  That is not the law, nor is it consistent with common sense.  Is every defendant who signs a cooperation plea agreement making an unlimited agreement to turn over to any defendant, upon any request, cell phones, email accounts, bank account information, medical records, or other highly personal data for which no showing of materiality has been made?  By this logic, must the government also compel a cooperating defendant to submit to an interrogation by defense counsel in that case?  Or defense counsel in unrelated cases still searching for a defense?  It is hard to see where this entitlement would end.  But it is easy to see how such a process would undermine investigations and prosecutions.

1  materiality suffice."  <u>United States v. Mandel</u>, 914 F.2d 1215, 1219

2  (9th Cir. 1990).[13]

3       Defendants argue they are entitled to "fulsome discovery that

4  could be used to undermine the testimony [of trial witnesses]"

5  without presenting any facts that tend to show what evidence - beyond

6  the trove of information previously provided that is within the scope

7  of the search warrants and consents - would meaningfully "undermine"

8  anything.  (CR 381 at 9.)  In short, defendants seek here what many

9  others would seek to avoid – namely, a major data dump of material in

10 order to scavenge anything of relevance, while already in the

11 possession of substantial amounts of tailored and undeniably helpful

12 impeachment evidence related to these same individuals.  Despite

13 invitations from the government, defendants do not point to

14 Attachment B of the search warrants to identify categories of

15 information that were missing, nor do they identify any gaps in the

16 produced evidence, like missing portions of text message chains or

17 relevant time periods.[14]  Nor could they, because the seized data

18 encompasses broad categories of information and has already been

19 produced to the defense.  Instead, defendants admit, as they must,

20 that their mission is a fishing expedition, making the self-defeating

21 argument that they "have no obligation to disclose" their theory of

22 materiality in order to obtain the requested discovery.  (CR 381 at

23 12 n.4.)  They claim they need to inspect the devices "for

24 ─────────────────

25      [13] Rule 16 is "broader than <u>Brady</u>" because "[i]nformation that is
   not exculpatory or impeaching may still be relevant to developing a
26 possible defense." <u>United States v. Muniz-Jaquez</u>, 718 F.3d 1180,
   1183 (9th Cir. 2013).

27      [14] Defendants have continually failed to respond to the
   government's request to "provide a threshold showing of materiality."
28 (CR 381-4, Def. Ex. C (4/28/21 Government Letter) at 2, citing
   <u>Stever</u>.)

information of their contemporaneous conduct," without explaining

what that means and why the produced evidence does not already cover

that information, and then assert they can inspect this private

information for "other wrongdoing for impeachment purposes," again

without even attempting to articulate what that theoretically would

even entail or how that information expands on the significant

impeachment information already long in their possession (e.g., the

plea agreements including detailed factual bases, the seized and

specifically tailored data related to criminal conduct, etc.).  (CR

381 at 12.)  "[R]equests which are designed to generally cast for

impeachment material ... are not material.  Such requests are simply

speculative inquiries without basis in fact to believe that the

information acquired will be significantly helpful."  United States

v. Liquid Sugars, 158 F.R.D. 466, 472 (E.D. Cal. 1994).

The only other rationale defendants offer is that "witness

narratives have changed throughout the government's investigation."

(CR 381 at 15.)  Defendants' very ability to make this argument is

due to the government's fulsome discovery production showing the

witnesses' statements at different points in time.  At no point do

defendants point to gaps in that production or otherwise attempt to

explain how having full access to the witnesses' phones and email

accounts will shed more light on their statements to the government.

**B.   Communications with Defense Counsel for Fourteen
      Individuals and Entities**

As noted above, the government has made broad disclosures and

produced discovery well beyond its obligations.  Although the Jencks

Act does not require production of witness statements before trial,

the government began producing witness statements from the very start

of the case.  The broad discovery has included not only reports of interviews with witnesses, but also notes from those interviews, text messages and emails between the witnesses and agents, and even certain substantive communications between the government and counsel for witnesses where appropriate.  (See CR 381-4, Def. Ex. C (4/28/21 Government Letter) at 3-4.)

Defendants sweepingly request "evidence of communications, including scheduling notices, non-privileged notes, or other documentation of communications between the government" and fourteen individuals and entities, including with their counsel.  (CR 381 at 2.)  Defendants make no attempt to establish materiality for all these communications, including non-substantive communications such as scheduling notices, and AUSA notes.  Because the government has already produced reports of interviews of witnesses, the remaining material in dispute appears to be limited to communications between the government and counsel for third parties.

As an initial matter, defendants offer no rationale or legal support for their proposition that they are entitled to communications between the government and attorneys for non-testifying third parties.  All of defendants' arguments and legal authority pertain to cooperators and trial witnesses, not to a broad array of individuals who were interviewed as part of a large investigation.  See, e.g., CR 381 at 11 (marking argument for "testimony of cooperators and witnesses"), 10-11 (citing cases that apply to witnesses).  Because defendants do not even attempt to articulate how the discovery they seek is material with respect to non-testifying third parties, they again have failed to make the required threshold showing of materiality for those individuals.

As for witnesses who will testify in the government's case-in-chief, rather than clearly articulating what more they are seeking and their rationale, defendants make convoluted inferences for the government and the Court to decipher. Defendants argue that "[i]t is a reasonable inference that the prosecutors had separate, unrecorded conversations with Goldman's counsel about whether they believed Goldman's testimony." (CR 381 at 15.) Presumably, defendants are arguing that they are entitled to materials reflecting "unrecorded conversations" with witnesses' counsel about whether the government believed or doubted a witness account at any given time. Defendants cite no case in which a court has held that criminal defendants have a right to such "unrecorded" communications under any theory, and there is no conceivable benefit to be gained from any such material. See, e.g., Morris v. Ylst, 447 F.3d 735, 742-43 (9th Cir. 2006). ("[A] statement of the prosecutor's opinion or a recording of his thoughts about whether Barrett testified truthfully ... is not Brady material.")

Again, it is difficult to readily identify the scope or basis of what specifically defendants seek in this request, but they seem to be demanding Brady/Giglio and Jencks Act in advance of the stipulated deadline for such discovery (August 19, 2022). Defendants have identified no basis to revisit the parties' agreement and the Court's order, and none exists. The government will continue to produce Rule 16, Brady/Giglio, and Jencks discovery, consistent with its duty to make prospective decisions about what falls into those categories. The government agrees that if it learns Brady/Giglio information from a witness' counsel, or if the prosecutors document such information in their notes, the government has a duty to disclose those non-

1    cumulative "underlying exculpatory facts." Morris, 447 F.3d at 742;

2    United States v. Kohring, 637 F.3d 895, 908 (9th Cir. 2011) ("[W]hile

3    the prosecution did not have a duty to disclose the e-mail itself or

4    the opinion work product in the e-mail, it did have a duty to

5    disclose the non-cumulative underlying exculpatory facts in the e-

6    mail.") (citation omitted).  The government has never argued that the

7    nature of how it learns about or documents information somehow

8    shields it from its discovery obligations.  Further, to the extent

9    the government made promises for benefits or leniency in exchange for

10   testimony not otherwise documented in plea agreements or reports, the

11   government has agreed to produce such discovery.

12        Defendants' attempt to gain access to prosecutors' calendars and

13   thousands of emails with attorneys to rummage for anything they might

14   deem helpful to their case is the definition of a fishing expedition.

15   Lucas, 841 F.3d at 807 ("A defendant's right to discover exculpatory

16   evidence does not include the unsupervised authority to search

17   through the [government's] files."); United States v. Mayes, 917 F.2d

18   457, 461 (10th Cir. 1990) ("The constitution does not grant criminal

19   defendants the right to embark on a 'broad or blind fishing

20   expedition among documents possessed by the Government.'" (quoting

21   Jencks v. United States, 353 U.S. 657, 667 (1957))); United States v.

22   Phillips, 854 F.2d 273, 278 (7th Cir. 1988) ("a Brady request does

23   not entitle a criminal defendant to embark upon an unwarranted

24   fishing expedition through government files").  Their legally and

25   factually baseless request for such an expedition should be denied.

26   **V.   CONCLUSION**

27        For the foregoing reasons, the government respectfully requests

28   that this Court deny defendants' latest Motion to Compel (CR 381).