1   TRACY L. WILKISON
    United States Attorney
2   SCOTT M. GARRINGER
    Assistant United States Attorney
3   Chief, Criminal Division
    MACK E. JENKINS (Cal. Bar No. 242101)
4   Assistant United States Attorney
    Chief, Public Corruption & Civil Rights Section
5   VERONICA DRAGALIN (Cal. Bar No. 281370)
    CASSIE D. PALMER (Cal Bar. No. 268383)
6   Assistant United States Attorneys
    Public Corruption & Civil Rights Section
7        1500 United States Courthouse
         312 North Spring Street
8        Los Angeles, California 90012
         Telephone: (213) 894-2091/0647/0363
9        Facsimile: (213) 894-6436
         E-mail:    Mack.Jenkins@usdoj.gov
10                  Veronica.Dragalin@usdoj.gov
                    Cassie.Palmer@usdoj.gov
11
    Attorneys for Plaintiff
12  UNITED STATES OF AMERICA

13                  UNITED STATES DISTRICT COURT

14              FOR THE CENTRAL DISTRICT OF CALIFORNIA

15  UNITED STATES OF AMERICA,        No. CR 2:20-326(A)-JFW-5, 6

16           Plaintiff,              GOVERNMENT'S BRIEF IN SUPPORT OF
                                     JURY INSTRUCTION RE: LAWFUL
17           v.                      GOVERNMENT TACTICS; EXHIBIT A

18  DAE YONG LEE,                    Trial Date:  June 14, 2022
      aka, "David Lee,"              Trial Time:  8:00 AM
19  940 HILL, LLC,                   Location:    Courtroom of the
                                                  Hon. of the Hon.
20           Defendants.                           John F. Walter

21

22        Plaintiff United States of America, by and through its counsel

23  of record, the United States Attorney for the Central District of

24  California and Assistant United States Attorneys Mack E. Jenkins,

25  Veronica Dragalin, and Cassie D. Palmer, hereby files its Brief in

26  Support of Jury Instruction re: Lawful Government Tactics and Exhibit

27  A attached in support thereof.

28

This brief is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 26, 2022                    Respectfully submitted,

                                        TRACY L. WILKISON
                                        United States Attorney

                                        SCOTT M. GARRINGER
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                              */s/ Cassie D. Palmer*
                                        MACK E. JENKINS
                                        VERONICA DRAGALIN
                                        CASSIE D. PALMER
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.   BACKGROUND**

3      The government has proposed that the Court instruct the jury in

4   accordance with Ninth Circuit Model Criminal Jury Instruction No.

5   3.10, relating to the government's use of undercover agents and

6   informants.  See Ninth Circuit Model Criminal Jury Instructions, No.

7   3.10 (2022 ed.); see also Dkts. 483, 484.  Defendants have opposed

8   such an instruction.  (Id.)  In evaluating the propriety of this

9   instruction, the Court noted: "[I]f the defense attacks the

10  Government investigative practices and, specifically, the use of a

11  cooperating witness, then I would be inclined to give Instruction No.

12  18."  Trial Tr. 1584-85.  The defense has done just that—repeatedly.

13  The Court accordingly should instruct the jury about the propriety of

14  the government's investigative practices to avoid confusion of the

15  issues and prejudice to the government.  Per the Court's order,[1] the

16  government has attached hereto as Exhibit A its proposed revised

17  Instruction No. 18.

18

**II.  ARGUMENT**

19     Throughout trial, defendants repeatedly and broadly attacked the

20  propriety of the government's use of lawful and permissible law

21  enforcement processes and tactics, including the use of cooperating

22  witnesses who made surreptitious recordings.  See, e.g., Trial Tr.

23  177, 191 (opening statement: alleging the government "secretly

24  recorded conversations," "rummage[d] through houses and offices";

25  Justin Kim "decided to pin it on" defendant and "agreed to secretly

26

27  _____

28       [1] The Court previously requested that the government submit a
    revised instruction referencing the names of both cooperating
    government witnesses.

1    record conversations with Mr. Lee at the direction of the FBI");

2    Trial Tr. 427 ("You placed video bugs in rooms, secretly videotaping

3    people in their rooms?), 428 ("You had -- you had people involved --

4    well, we talked about that -- secretly recording conversations.");

5    437 ("There's no secretly recorded video of Mr. Lee agreeing to pay a

6    bribe to Jose Huizar?"); Trial Tr. 463 ("And we talked about the

7    secret recordings -- not in bedrooms -- of videos and -- of video or

8    audio in rooms; correct?"); 1596 ("And, in fact, during your prior

9    interviews with the Government in 2017, they had worked to scare you;

10   right?") (emphases added).  Defense counsel doubled down on this

11   theme when cross-examining one of the government's cooperators,

12   Justin Kim.

13           Q:  Now, the next day you go out and you record Mr. Lee;

14       right?

15           A Yes.

16           Q That was at your suggestion?

17           A The Government.

18           Q And you knew that this is your best chance to get on the

19       cooperation bus; right?

20           A Yes.

21           Q Get evidence against Mr. Lee; right?

22           A Right.

23           Q And you had been instructed by the FBI to try to get him

24       talking; correct?

25           A Yes.

26           Q Try to get a confession out of him; right?

27   Trial Tr. 1716-1717.  Then, in closing argument, the defense

28   repeatedly suggested the government was acting improperly through its

1  use of cooperators.  Trial Tr. 1958 ("It's just people who have
2  hitched their wagon to an indispensable witness [Justin Kim] who has
3  hooked them, hooked them."), 1960 ("[Justin Kim has] been trying to
4  get on that cooperation bus.  He's been planning on it.   And he
5  knows that the best way -- he told you.  The best way he can do it is
6  by getting something that sounds like a confession out of my
7  client."); 1961 ("Now, [the recordings are] not in evidence, so we
8  can't talk about them.  But it is fair for you to question the
9  Government's actions.  It is fair.  It is part of the deliberative
10  process.") (emphases added); 1990 ("Anyone standing trial on a case
11  built on the opinion of a repeat liar with everything to gain from
12  lying all over again deserves better.  The FBI should have kept
13  investigating."); 1984-1991 (repeatedly and broadly attacking the
14  government's investigation and investigative techniques).  Further,
15  defense counsel also incorrectly and misleadingly argued in closing
16  argument that the government simply let Kim keep "$340,000 tax free"
17  as part of his cooperation with the government.  Trial Tr. 1953-54.
18      The government's proposed instruction is both necessary and
19  appropriate in this case.  The defense has attacked, at all stages of
20  trial, the propriety of the government's use of lawful and
21  permissible law enforcement tactics in this case.  See, e.g., Leahy
22  v. United States, 272 F.2d 487, 490 (9th Cir. 1959) ("[S]tealth and
23  strategy are necessary weapons in the arsenal of the police
24  officer."); United States v. Wahchumwah, 710 F.3d 862, 867 (9th Cir.
25  2013) (government agents may make concealed audio-video recording of
26  a suspect's statements inside the suspect's home, with the consent of
27  the government agent, without a warrant); Jacobson v. United States,
28  503 U.S. 540, 548 (1992) ("[T]here can be no dispute that the

1   Government may use undercover agents to enforce the law;" "Artifice
2   and stratagem may be employed to catch those engaged in criminal
3   enterprises." (citations omitted)); United States v. Slaughter, 891
4   F.2d 691, 696 (9th Cir. 1989) ("The Government may use informants and
5   pay them" and the informant who must "win a suspect's confidence . .
6   . must make overtures of friendship and trust and must enjoy a great
7   deal of freedom in deciding how best to establish a rapport with the
8   subject."). Due to defense counsel's repeated attacks, in the
9   absence of this instruction, the jury may be left with the misleading
10  and incorrect impression that the law enforcement tactics used in
11  this case were not lawful or permissible, which is contrary to the
12  law.

13      Defendants have argued that this instruction is inappropriate
14  because they are not raising an entrapment defense. But United
15  States v. Winslow, 962 F.2d 845 (9th Cir. 1992) permits the Court to
16  provide this instruction, even in the absence of an entrapment
17  instruction. In Winslow, the defense counsel, like the defense
18  counsel here, objected to the inclusion of the undercover agent
19  instruction in the absence of the entrapment instruction. Id. at
20  848. Defense counsel there, much like defense counsel here,
21  insinuated "that the government and [its undercover informant] acted
22  improperly," including by stating that the informant "engaged in lies
23  and deceit" and was like a "spider pouncing on its prey." Id. Under
24  these circumstances, the Winslow court held that the district court
25  "did not abuse its discretion by giving the undercover agent
26  instruction to help the jury understand the nature of undercover
27  police work." Id.

28

So too should this Court provide the requested instruction to help the jury properly understand the law and to prevent any misleading suggestion that the government acted improperly through its use of an informant, surreptitious recordings, or at any other part of the investigative or prosecution process.